## JOHN O'BRIEN v. OHIO INSURANCE COMPANY.

*Insurance—Statement of incumbrances—Proofs of loss.*

1. Where an insurance agent himself fills out a policy upon a mere oral application for insurance, and the applicant is not asked the amount of incumbrances, and does not know that it should be stated, his omission to state it is no defense to the payment of a loss, unless in cases involving unusual risk not likely to be contemplated by the insurer.

2. An insured person who is notified by an agent of the insurance company that the company absolutely refuses to pay a loss, is excused from furnishing proof of the loss or demanding payment before bringing suit on the policy, especially if an agent of the company has made investigation.

3. The stipulation in an insurance policy that any application, survey, plan or description of the property referred to therein shall be considered part of the policy, does not apply where the application &c. is not in writing.

4. An insurer who has absolutely denied liability for a loss is estopped from objecting to the want or sufficiency of the preliminary proof thereof; and a court will not presume reasons to support his refusal to receive such proof if seasonably offered.

5. The restrictions in policies of insurance upon the power of agents to deviate from their express terms generally apply only to those parts of the transaction which relate to the the formation and continuance of the contract, and not to those which prescribe the condition of suit on the policy, such as notice, delivery of proofs or submission to examination.

Error to Muskegon.    (Russell, J.)    Oct. 25.—Dec. 20.

ASSUMPSIT.    Defendant brings error.    Affirmed.

*Norris & Uhl* for appellant.

*Campbell & Allen* for appellee.    Where a policy is issued on verbal application without any representation, all information as to the risk is waived unless the risk is unusual:    Wood on Ins. § 162; *Com. v. Hide & L. Ins Co.* 112 Mass. 136; *Bahringer v. Empire &c. Ins. Co.* 2 Thomp.

& C. 610 ; *Kernochan v. N. Y. &c. Ins. Co.* 17 N. Y. 428 ;
*Emery v. P. &c. Ins. Co.* 52 Me. 322 ; and this is so when
the policy is issued on the agent's knowledge : Wood on
Ins. §§ 203–205 ; *Bartholomew v. Merchants' Ins. Co.* 25 Ia.
507 ; see *N. A. Ins. Co. v. Throop* 22 Mich. 146 ; *Peoria
Ins. Co. v. Hall* 12 Mich 202 ; *Mich. State Ins. Co. v.
Lewis* 30 Mich. 41 ; *Aurora Ins. Co. v. Kranich* 36 Mich.
289 ; *Am. Ins. Co. v. Gilbert* 27 Mich. 430 ; *Lorillard Ins.
Co. v. McCulloch* 21 Ohio St. 176 ; a policy is not avoided
even if oral statements made are false, if they were made
honestly : *Alexander v. Germ. &c. Ins. Co.* 5 Thomp. & C.
208 ; *Plumb v. Cattaraugus County Ins. Co.* 18 N. Y.
392 ; in cases of fire insurance the insured may be silent as
to all matters open to observation if the insurer makes
examination for himself : Wood on Ins. § 81 n. 6 ; *Green v.
Merch. Ins. Co.* 10 Pick. 402 ; *Fish v. Cottenet* 44 N. Y.
538 ; and when the insurer makes no inquiry it is presum-
able that no information is desired : *Clark v. Manuf's Ins.
Co.* 8 How. 249 ; see generally *Norwich & N. Y. Transp.
Co. v. W. Mass. Ins. Co.* 34 Conn. 561 ; *N. & N. Y. Trans.
Co. v. How. Fire Ins. Co.* 12 Wall. 194 ; *Tayloe v. M.
&c. Co.* 9 How. 396 ; *Noyes v. W. &c. Ins. Co.* 30 Vt.
659 ; *Martin v. F. Ins. Co.* 20 Pick. 389 ; *Security Ins.
Co. v. Fay* 22 Mich. 467 ; *Hibernia Ins. Co. v. O'Connor*
29 Mich. 241 ; *Merc. Ins. Co. v. Holthaus* 43 Mich. 423 ;
*Kernochan v. N. Y. &c. Ins. Co.* 17 N. Y. 428.

GRAVES, C. J.   The plaintiff recovered on one of defend-
ant's policies and error is alleged.

*First.*   We think the declaration was sufficient under the
rule of court, [Circuit Court Rule 104] and that the contract
of insurance was properly admitted.   The objection of vari-
ance was not tenable.[1]

*Second.*   At the date of this policy and down to the occur-
rence of the fire an incumbrance by mortgage of from three

---

[1]Circuit Court Rule 104 provides that in declaring upon printed policies
of insurance it shall not be necessary to set forth specifically any more
than the date and amount of the policy; the premium paid or to be paid;
the property or risk insured; and the loss.

to five hundred dollars rested on the property. The argument by the plaintiff that there was a lack of evidence on this subject is not warranted. Among other items of proof the record contains an offer by the plaintiff to swear to the fact himself. Moreover, it appears by the charge that it was not disputed. The property was in Muskegon, and the policy was there issued and delivered through Haines & Chamberlain, the defendant's local agents. The transaction of the business was confined to Haines and O'Brien. There was no written application. O'Brien called on Haines to effect an insurance and told him where the property was; and Haines observed that he knew the property, and at

---

The declaration was as follows:

MUSKEGON COUNTY—ss.

John O'Brien, of the city of Muskegon, plaintiff in this suit, by Campbell & Allen, his attorneys, complains of Ohio Insurance Company, defendant herein in a plea of trespass on the case upon promises, filing this his amended declaration, in pursuance of the statute in such case made and provided and of the leave and order of said court.

For that the said defendant, which is a corporation duly organized and existing under and by virtue of the laws of the State of Ohio, and authorized thereunder to do the business of fire insurance, and which is duly admitted under the laws of the State of Michigan to do and carry on such business, doing business at the county of Muskegon aforesaid, heretofore to-wit, on the 29th day of March, A. D. 1882, at the city of Dayton, in the State of Ohio; to-wit: at the city of Muskegon aforesaid. on the application of the plaintiff made a certain policy of insurance in writing, whereby the said defendant in consideration of six dollars to it in hand paid by the said plaintiff, receipt whereof was thereby acknowledged, did insure the said plaintiff against loss or damage by fire, to the sum of four hundred dollars, to the following specified and located property, to wit: on his one story frame, shingle roof dwelling house and woodshed attached, situate, detached, on his two-acre lot situate on the northwest corner of Division street and Laketon avenue, in the city of Muskegon, Michigan, aforesaid.

And the said defendant, for the consideration aforesaid, did then and there and thereby promise and agree to and with the plaintiff, his executors, administrators or assigns, to indemnify and make good to plaintiff all such immediate loss or damage, not exceeding in amount the said sum of four hundred dollars, nor the interest of the said assured in the property, as should happen by fire to the property specified, as aforesaid, from the said 29th day of March, A. D. 1882, at 12 o'clock at noon, until the full end and term of three years next ensuing, to-wit: until the 29th day of March, A. D. 1885, at 12 o'clock at noon, which policy being No. 35,561.

And the said plaintiff further avers that at the time of the making, execution and delivery of said policy of insurance as aforesaid, and from thence until and at the time of the loss and damage hereinafter mentioned, he had an interest in said insured property to a large amount, to-wit: to the amount of one thousand dollars, to-wit: being the sole owner thereof in fee simple absolute, to-wit: at the county aforesaid, and that afterwards,

once filled out the policy and delivered it. The plaintiff swears that it was not read to him, and that his attention was not called to any of its conditions or provisions, and that no questions were asked about mortgages or anything said on the subject, and that he did not disclose the existence of the mortgage. Mr. Haines testifies that O'Brien was silent in regard to incumbrance, although it is his recollection that he asked him about a mortgage. The policy contained this stipulation :

"If any application, survey, plan or description of the property herein specified is referred to in this policy, such application, survey, plan or description shall be considered a part of this policy and the basis of this insurance : provided, however, that this company will not be liable under and by virtue of this policy, if there be any omission or false representation by the assured of the title, incumbrance, condition, location or occupancy of the property, or any

to-wit: on the 15th day of April, A. D. 1882, the said property so covered and insured in and by said policy of insurance as aforesaid, was burned, consumed and destroyed by fire, which did not happen or take place by means of any act or neglect of this plaintiff, or of any one in his behalf, whereby the said plaintiff sustained damages to a large amount, to-wit : to the sum of four hundred dollars, to-wit: at the county of Muskegon, aforesaid.

And the said plaintiff further avers that although he has in all things observed, performed and fulfilled all and singular the matters and things which on his part were to be performed and fulfilled according to the form and effect of said policy of insurance, and although he has sustained loss and damage on occasion of said fire to the said sum of four hundred dollars, yet the defendant has hitherto failed and neglected to pay to him the said sum or any part thereof.

The plaintiff avers that being so indebted the said defendant afterwards, to-wit: at said county, on, to-wit: the 20th day of June, A. D. 1882, faithfully-undertook and promised to pay to said plaintiff the said sum of money, when thereunto afterwards requested: yet the said defendant, although often requested so to do, has not as yet paid the said sum of money or any part thereof, to the plaintiff's damage of four hundred and fifty dollars. Therefore he brings suit &c.

September 9, 1882.                 CAMPBELL & ALLEN,
                                                    Attys for Pl'ff.

Objection was made to receiving evidence under this declaration on the ground that it did not aver notice to defendant of the loss, nor show that it was due and payable nor state a sufficient consideration for the absolute promise to pay $400.

Objection was made to receiving the policy in evidence on the ground also, that the policy set up in the declaration is a policy payable immediately upon the destruction of the insured property by fire, while the policy offered is payable sixty days after proofs of loss, and the company is not liable upon it until after sixty days from the time when proofs of loss were furnished by plaintiff to defendant.

over-valuation or any misrepresentation whatever, either in a written application or otherwise."

The defendant contended in the circuit court, as it contends here, that the plaintiff's failure to inform the agent of the mortgage was a violation of the foregoing provision of the policy and a complete answer to the action. The circuit judge differed, and first observing that there was no written application, and no provision for a preliminary examination of the applicant by the agent, proceeded to charge the jury, in substance, that if they found that the policy was not read to the plaintiff before it was delivered to him, and that the agent gave it to him on his oral application without directing his attention to the conditions respecting incumbrance, and that the plaintiff on receiving the policy was ignorant of them, and that nothing was said either by the agent or the plaintiff before or after the emanation of the policy in regard to incumbrance, that they might then consider the existence of the mortgage as no impediment to recovery.

The defendant can sustain no exception to this charge. The provision in the policy is not applicable. The first paragraph relates to cases where applications, plans, surveys or descriptions are made and are by necessity in writing, and the last clause though not very clear, most obviously does not intend a case of mere silence in regard to the existence of incumbrance where no inquiry is made, and where no explanation is asked for, and the applicant is utterly unaware that any is required. If an insurer is apparently indifferent whether a property is unincumbered and is content to insure without in any way suggesting an interest in the question, the bare silence of the applicant upon it cannot be deemed a misrepresentation. If the applicant is guilty of no misleading conduct the insurer in such a case must be taken to assume the risk incident to the undisclosed incumbrance. It must not be intended that the principle would hold in regard to incidents obviously implying unusual risks, and not likely to be discerned or contemplated by the insurer. The case requires no observa-

tions on that subject. It is sufficient to suggest the distinction.

*Third.* By clause 10 of the policy the plaintiff was required to render, as soon after the fire as possible, a particular account of the loss, signed and sworn to, and containing certain particulars there enumerated. And it was further provided by clause 13 that in case of being required by any person appointed by the company, either before or after the rendition of the preliminary proof, the plaintiff should submit to examination under oath and subscribe thereto &c. And it was declared by the 9th clause that "the use of general terms or anything less than a distinct specific agreement, clearly expressed and indorsed on the policy, should not be construed as a waiver of any printed or written condition or restriction therein;" and the local agent Haines, who filled out and delivered the policy, testified that his firm, as local agents, had no authority to waive any conditions and never undertook to do so.

The fire occurred on the 10th or 11th of April, 1882, and the plaintiff notified Haines, the local agent, the next day, and he undertook to convey information to the home office, and did so. The defendant directed Mr. Garnsey of Grand Rapids, its adjusting agent for the district, to examine into the loss, and he repaired to Muskegon for that purpose on the 19th of the same month or in about a week after the fire. He called on the plaintiff for an account of the loss and for a statement of facts, and after interrogating the plaintiff as fully as he wished, he wrote out an elaborate detail containing everything from the plaintiff he saw fit to require. He then asked the plaintiff to sign this statement and swear to it. But the latter requested that before doing so it might be shown to his legal advisers, Messrs. Campbell & Allen, and he went with Garnsey to their office. Mr. Campbell objected that a few of the details were neither relevant nor proper, and that the plaintiff ought not to sign the paper and swear to it unless they were stricken out. Some discussion followed, and these passages were at length marked out and the plaintiff offered to subscribe and swear

to the statement as thus altered. But, after some hesitation, Mr. Garnsey decided to insist on the statement as originally drawn, and he shortly after went away and took the paper with him.

The failure of a technical consummation of a full exhibit at this time was caused by the difference referred to in regard to the fitness of the particular passages objected to. The parties to this interview do not perfectly agree in regard to all that was said, but what has been stated is not matter of dispute. The plaintiff swears that Garnsey stated to him on leaving that he, the plaintiff, would hear from him in a few days. But Garnsey testifies that he thinks he did not promise to communicate with him; that according to his recollection he said that if he had occasion to communicate with him he would do so through the agents, Haines & Chamberlain. He also thinks he made no further communication to the plaintiff. At the close of this interview, and on the same day, Mr. Garnsey made a long report of the case to the home office and sent with it the statement which the plaintiff had refused to sign. The report was long and accusatory, and it conveyed in the plainest manner the agent's positive opinion that the fire was a criminal burning by the plaintiff. This report was received at the home office, and thereafter the company continued silent.

The plaintiff waited till the 10th of May, and then addressed a letter through his counsel to the company. He referred to the disagreement with Garnsey concerning certain passages in the statement which the latter wrote out, and also to the delay which had taken place and to some other matters, and then informed the company that he waived his objections and would sign and swear to the statement in the form in which it was written out. The company made no reply and gave no intimation of having received the letter. It appears, however, that it reached the home office and that the secretary sent it to Garnsey, and also went himself to see that gentleman in relation to the matter it referred to. The conclusion reached by that interview is not expressly disclosed. The inference is

unquestionable. The defendant's conduct accorded with the report made by Garnsey, and it justified the implication that it refused payment of the loss on the ground of fraud. The letter remaining unanswered and unacknowledged, Mr. Campbell, on behalf of the plaintiff, called on Mr. Chamberlain, one of the local agents, and inquired what the defendant proposed to do, and he replied that it would not pay the loss because it was supposed that the fire was fraudulently contrived by the plaintiff.

This suit was then instituted to compel payment of the loss, and without previous service of preliminary proof. The defendant gave notice of false representations as matter of defense, but made no mention of the omission to furnish a statement of the loss. The statement made by Chamberlain to Campbell that defendant would not pay the loss on the ground that the burning was believed to be fraudulent was true. The company had decided. There is no room for any question on that subject. Indeed it is not denied. But the defendant claimed at the trial and claims here that Chamberlain's authority as local agent did not extend far enough to entitle him to give an instructive and truthful answer to the question put to him. He was expressly called upon in his character of agent, and in respect to a pending claim under a policy which his associate agent had given out. It is not denied that he knew his company had then determined not to pay, and for the reason which he explained. It is not denied that the plaintiff was entitled to the information sought, and it is not denied that the inquiry was in good faith. We think the plaintiff was entitled to receive from Chamberlain, as defendant's agent, the truth which he communicated, and to act upon it.

Under various forms the defendant raises the question that the omission to serve preliminary proof and submit to examination was an incurable defect. On this subject the circuit judge gave the following instruction :

" The plaintiff under this policy was not required to furnish any proofs of loss save the account required by clause 10 of the policy, which provides that the assured in case of

loss should render a particular account of the loss, signed and sworn to, stating any other insurance, the cash value of the property and his interest therein, and the purpose for which and by whom the property was used at the time of the fire, and when and how the fire originated. The adjusting agent of the company having come, within a few days after the fire, and examined the defendant as to the loss, &c., and reduced to writing the statement of plaintiff, or such parts of the statements as he saw fit, if you find that the plaintiff disclosed to the adjusting agent and furnished him at the time with all the facts and information required to be given in such account, and submitted to such examination as the adjusting agent then required, and offered to sign and swear to a statement setting forth the same, but the agent added to the statement matters about other fires and then required plaintiff to sign the statement, and plaintiff had a right to refuse to sign such statement as thus prepared, and if the plaintiff offered to sign and swear to the statement, after erasing those matters, but the agent insisted on their remaining in, and took the statement away with him, and promised to communicate with the plaintiff in a few days and failed to do so, and after waiting awhile the letter of May 10th was sent by plaintiff's attorney to the defendant, if you find that afterwards the agent of the defendant informed the plaintiff or his attorneys that the defendant repudiated all liability on the policy and would not pay the loss on the ground that the fire occurred through plaintiff's fraud, or upon other grounds not relating to the sending of the particular account, the plaintiff was not, under all the circumstances, required to render or furnish any further account before bringing suit."

This instruction was strictly applicable to the state of fact, and it appears to be unobjectionable in principle. Were it necessary to recur to the common doctrine which estops the insurer from objecting to the want or sufficiency of preliminary proof where he has put himself upon the extreme ground of absolute non-liability, the consequence would not be different. The ascertained facts would subject the case to that principle. The usual provisions against deviations from written terms, and by way of restriction of the power of particular agents, are in general only applicable to those parts which relate to the formation and continuance of the contract, and not to those portions which

assume to point out the matters and things to be observed by the insured after a loss, in order to enable him to sue, such as the giving of notice and the delivery of preliminary proofs of loss or submitting to examination. *Carson v. Jersey City Ins. Co.* 14 Vroom 300.

But here the insurer had a full investigation. The facts were all before its agent and were, moreover, in writing. The statement in the form in which the plaintiff at once offered to sign and swear to it, although very slightly abridged, was full and in substantial compliance with the call in the policy. But this is not all. He subsequently offered to subscribe and swear to it in the very form in which the agent originally drew it, and the offer was not accepted. It was not claimed to be too late. Indeed, no reason was given and we are not to search for one. None of the series of objections in this part of the case can be sustained. *Roper v. Lendon* 1 E. & E. 825; *Commonwealth Ins. Co. v. Sennett* 41 Penn. St. 161; *Great Western Ins. Co. v. Staaden* 26 Ill. 360; *Mason v. Harvey* 8 Exch. 819; *Walsh v. Washington Ins. Co.* 32 N. Y. 427; *Braunstein v. Accidental Death Ins. Co.* 1 B. & S. 782; *Charleston Ins. Co. v. Neve* 2 McMullan 237; *Patterson v. Triumph Ins. Co.* 64 Me. 500; *State Ins. Co. v. Maackens* 38 N. J. L. 564; *Imperial Ins. Co. v. Murray* 73 Penn. St. 13; *Killips v. Putnam Ins. Co.* 28 Wis. 472; *Lycoming Ins. Co. v. Dunmore* 75 Ill. 14; *Sexton v. Montgomery Ins. Co.* 9 Barb. 191; *Maher v. Hibernia Ins. Co.* 67 N. Y. 283; *West Rockingham Ins. Co. v. Sheets* 26 Gratt. 854; *Phillips v. Protection Ins. Co.* 14 Mo. 220; *Blake v. Exchange Ins. Co.* 12 Gray 265; *Catlin v. Springfield Ins. Co.* 1 Sumner 434; *Gilbert v. North American Ins. Co.* 23 Wend. 43; *Mercantile Ins. Co. v. Holthaus* 43 Mich. 423; *Schenck v. Mercer County Mut. Ins. Co.* 24 N. J. L. 447; *Clark v. N. E. Mut. Ins. Co.* 6 Cush. 342; Wood on Insurance 176, 832, 846, 837, 702.

The judgment should be affirmed with costs.

The other Justices concurred.