W. E. JOHNSON, Plaintiff and Respondent, *v.* DAKOTA FIRE & MARINE INSURANCE COMPANY, Defendant and Appellant.

**1.   Insurance — Limitation of Time to Bring Action On.**

A stipulation in an insurance policy issued in Dakota territory, upon property therein, which limits the time within which an action may be brought upon the policy to the period of six months from the date of loss, is void.    Such stipulation would be upheld at common law, but is void under the statute.    § 3582, Comp. Laws.

**2.   Same — Statements Contained in Application Material.**

Where a written application signed by the insured declared that "the statements made by me, and answers to questions above given, are true, and a warranty on my part, and are the basis upon which I ask hail insurance by the Dakota Fire & Marine Insurance Company on the crops herein described," and where the policy refers to such language as follows: "Assured's application, of even number and date herewith, on file in the office of the company in Chamberlain, Dakota, is hereby referred to as a part hereof, and is a warranty on the part of the assured, and the basis on which this insurance is written"—and where the policy further declares "that any misrepresentation or false statement or concealment of facts in the application, or if the property is or becomes incumbered, shall operate to render the policy void"—*held*, that such statements, if not intrinsically material, have been made so by the express agreement of the parties, and such agreement must prevail, under Comp. Laws, § 4163, which provides:   "A policy may declare that a violation of specified provisions thereof shall avoid it; otherwise the breach of an immaterial provision does not avoid the policy."

**3.   Same; Same—Error of Soliciting Agent Chargeable to Insurer; How Proved.**

Where the agent who solicits insurance, either by his direction or act, makes out an application for insurance incorrectly, notwithstanding all the facts are stated to him truthfully by the applicant, the error or fraud will not defeat the policy, and is chargeable to the insurer, and not to the insured.    *Held, further*, that parol evidence is admissible to show that the application was filled up by the agent, and that

the answers of the applicant were falsified by the agent without the applicant's knowledge.

### 4. Same; Insured Charged With Notice by Possession of Copy of Application.

Where a policy of insurance, with a copy of the application indorsed thereon, was sent by the company to the insured, and was in the possession of the latter for several months before the loss occurred, *held*, that the insured was chargeable in law with knowledge of the contents of both the policy and the application, and the circumstance that the assured did not actually read or know the contents of the application, or know that a copy of the application was indorsed on the policy, would make no difference. The paper being his own contract, and in his actual custody, he will be presumed to know all of its contents, even where the copy on the back was not referred to in the body as being indorsed on the back.

### 5. Same; By Silence After Notice Insured Participates in Agent's Fraud.

Under such circumstances, where a fraud is practiced by the agent upon both the insured and the insurer, and where such fraud would be readily detected by the insured upon reading the copy of the application indorsed on the policy, the insured will be estopped from denying knowledge of the fraud. It was the duty of the insured, upon receiving the policy, to proceed at once to have the same corrected or rescinded. He did not do so. *Held*, that by such silence, when he should have spoken, the insured constructively became a participant in the original fraud of the agent, and thereby forfeited his rights under the policy. Such policy was defeated in its very inception, and it never attached to the risk which it covered. See Comp. Laws, § 4164.

### Same; Same — Forfeiture Waived by Demanding Judgment for Premium Note.

At the time of the service of defendant's answer to the plaintiff's complaint in this action, the defendant had full knowledge of all the facts constituting the grounds of forfeiture of said policy by the plaintiff; and with such knowledge, and by way of counter-claim in its answer defendant seeks to recover from the plaintiff the amount of the premium note given by said plaintiff as a consideration for the issuance of said policy. *Held*, that pleading such counter-claim operated as a waiver of the forfeiture of the policy. The policy was not void, but was voidable at the option of the insurer. After knowledge of the forfeiture, defendant saw fit to demand judgment for its premium. This was equivalent to an independent action for the premium, and waived the forfeiture. If the answer had not, among other defenses, pleaded a forfeiture which went to the inception of the policy, and which would,

if established, defeat the premium note, the case would have been otherwise.

## Same; Failure to Furnish Proofs of Loss.

Where the plaintiff was bound by the terms of his policy, in the event of a loss, to furnish the insurer certain proofs of loss, but wholly failed to furnish the prescribed proofs or any proofs of loss, either within the time limited by the policy, or within a reasonable time thereafter, or at all, *held*, that, by reason of such default and omission, the plaintiff forfeited his right to recover under the policy.

## Same; Same; Waiver of Such Proofs.

Evidence to establish a waiver of such forfeiture examined, and *held* sufficient to constitute a waiver.

(Opinion Filed May 6, 1890.)

*A*PPEAL from district court, Grand Forks county; Hon. CHARLES F. TEMPLETON, Judge.

Messrs. Dillon & Preston for appellant, cited upon the proposition stated in paragraph 3 of the foregoing syllabus the following cases: Globe Ins. Co. v. Wolf, 95 U. S. 329; Ins. Co. v. Norton, 96 id. 240; Am. Ins. Co. v. McWharter, 11 Ins. Law Journal, 147; Susquehanna Ins. Co. v. Swank, 12 Ins. Law Journal, 625; Ryan v. Worlds Ins. Co., 41 Conn. 68; N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519. As to paragraph No. 4 they cited: Am. Ins. Co. v. Neiberger, 74 Mo. 167; Richardson v. Maine Ins. Co., 46 Me. 394; Smith v. Con. Ins. Co., 43 N. W. 810.

In opposition to the rule declared in paragraph 6 they cited: Smith v. State Ins. Co., 21 N. W. 145; May on Ins. 507; Davidson v. Young, 38 Ill. 152; Flower v. Elwood, 66 Ill. 447; Powell v. Rogers, 105 Ill. 318; N. W. Ins. Co. v. Amenman, 10 N. E. 225; Shimp v. Cedar Rapids Ins. Co. 16 N. W. 229.

J. H. Bosard (P. J. McLaughlin, of counsel,) for respondent, cited, in opposition to the rule declared in paragraph 2 of the syllabus, the following: Cont. Ins. Co. v. Rogers, 119 Ill. 474, (S. C. 59 Am. Rep. 810); Alabama, etc. Co. v. Johnson, 2 So. Rep. 125; May on Ins. §§ 181-4; Phenix Ins. Co. vs. Raddin, 120 U. S. 183; Moulor v. Am. Ins. Co., 111 U. S. 335; Southern Ins. Co. v. Booker, 24 Am. Rep. 344; May on Ins. §§ 156, 162-5; Car-

son v. Jersey City, etc., Co., 14 Vroom. 300; Bank v. Hartford Ins. Co., 95 U. S. 673; Lynchburg, etc., Co. v. West, 76 Va. 575, (S. C. 44 Am. Rep. 177;) Waterbury v. Dak., etc., Ins. Co., 43 N. W. Rep. 697; Fitch v. Am., etc., Co., 59 N. Y. 557; Washington Ins. Co. v. Raney, 10 Kan. 525; Schwarzbach v. Ohio, etc., Co., 25 W. Va. 622, (S. C. 52 Am. Rep. 227;) Helbing v. Svea, Ins. Co., 54 Cal. 156, (S. C. 35 Am. Rep. 72;) Price v. Phenix Ins. Co., 17 Minn. 497; Campbell v. N. E., etc., Co., 98 Mass. 381; M. & M. Ins. Co. v. Schroeder, 18 Bradw. 216; Elliott v. Ins. Co., 13 Gray 139; Anderson v. Sup. Grand Lodge, etc., 17 Atl. Rep. 119; Clapp v. Mass. Benefit Assn., 16 N. E. 433.

In support of the rule stated in paragraph 3 they cited among other cases: Andes Ins. Co. v. Fish, 77 Ill. 620; Kausel v. Farmers etc. Co., 16 N. W. 430; Ins. Co. v. Wilkinson, 13 Wall. 222; Jewett v. Carter, 132 Mass. 135; Ins. Co. v. Allen, 10 N. E., 85; Sullivan v. Ins. Co., 8 Pac. Rep. 112; Planters Ins. Co. v. Baxter, 25 Am. Rep. 780; Gans v. St. P. F. & M. Ins. Co., 43 Wis. 108; Manhattan Ins. Co. v. Weile, 26 Am. Rep. 364; Rowley v. Empire Ins. Co., 36 N. Y. 550; Com. Union Ins. Co. v. Elliott, 13 Atl. Rep. 970; Miller v. Phenix etc., Co., 14 N. E. 271. In support of the sixth paragraph they cited: Phenix etc., Co. v. Raddin, 120 U. S. 183; Wilson v. M. F. etc. Co., 30 N. W. 401; Masonic etc., Asso. v. Beck, 77 Ind. 203, (S. C. 40 Am. Rep. 295;) Stone v. Hawkeye Ins. Co., 28 N. W. 147; Smith v. St. P. F. & M. Co. 13 N. W. 355; Phenix Ins. Co. v. Lansing, 20 N. W. 22; Frost v. Saratoga etc., Co., 5 Denio 154; Fitzgerald v. Hartford etc., Co., 13 Atl. 673; Knickerbocker Ins. Co v. Norton, 96 U. S. 234. As to the waiver of proofs of loss they cited: Brink v. Hanover Ins. Co., 80 N. Y. 108; Ins. Co. v. Norton, 96 U. S. 284; Travelers Ins. Co. v. Edwards, 122 id. 457; Cleaver v. Traders Ins. Co. 39 N. W. 571; Badger v. Glens Falls Ins. Co. 49 Wis. 389.

WALLIN, J. This action is based upon a hail insurance policy issued by the defendant from its office at Chamberlain, Dak., and sent from there by mail to the plaintiff. The policy bears date May 13, 1885, and was issued in consideration of the receipt of a premium note for $70, executed by the plaintiff

and delivered to the defendant, and falling due October 1, 1885. In consideration of this note the policy declares that the defendant "does insure W. E. Johnson for the term of six months, from the 6th day of May, 1885, to the 6th day of November, 1885, at 12 o'clock noon, against loss or damage by hail to 100 acres growing crops, the property of assured, located and described as follows." It is conceded that "on the 15th and 28th days of July, 1885," the grain in question was damaged by hail to the amount of $1,375.04, and that plaintiff is entitled to that amount, less the accrued amount of the premium note, if entitled to recover at all.

By its answer, defendant admits issuing the policy upon the plaintiff's written application therefor annexed to the complaint, that no part of the loss has been paid, and that the premium note was not due when the loss occurred. "And for further answer defendant alleges that said policy of insurance contained the following covenant, viz.: 'Now, therefore, the capital stock and securities of said company shall be subject to make good unto the said assured, at the specified rate and terms of Schedule No. 2, on the back hereof, at 70 cents per acre, his, her, or their heirs, executors, administrators, or assigns, all such immediate loss or damages as may occur by hail to growing crops as above specified, described and located, and as set forth in the application for this insurance, but not exceeding the cash value thereof, nor the interest of the assured in the property, nor the average yield per acre, as provided herein, for the term of six months, from the 6th day of May, 1885, at noon, to the 6th day of November, 1885, at noon, and to be paid according to the terms and conditions hereof, but not until requisite proofs, duly sworn and certified to by the assured and one disinterested party, are received at the office of the company in Chamberlain, Dakota. But in no case will this company be liable for any loss or damage that may occur seven days after the crops hereby insured shall have matured.' That the plaintiff has wholly failed to make any proofs of loss certified and sworn to by assured and one disinterested party, and that the plaintiff has not in any manner furnished to this defendant, at any time before the commencement of this suit, at the office of the company in

Chamberlain, Dak., or at any other place, any proofs of loss whatever, and has wholly failed to comply with the provisions of the policy. And for further answer defendant alleges that it is provided in said policy of insurance that, 'when a loss shall have occurred, assured agrees to make and send by registered mail a statement thereof, not sooner than five and not later than ten days thereafter, if the crops are yet green. If ripe such notice must be mailed not later than the day following the loss.' Defendant avers that the plaintiff failed to make or send by registered mail a statement of his loss within the time mentioned, not sooner than five days and not later than ten days thereafter, nor did plaintiff in any manner send by registered mail a statement of said loss, showing that the grain was ripe, within the day following the loss; that the said plaintiff wholly failed to furnish the said information by registered mail within the time provided by said policy, or at any other time.

And defendant, further answering, alleges that the said policy of insurance contained the following covenant and agreement: 'It is also mutually agreed and made a part of this contract that no suit or action for the recovery of any claim for loss or damage under this policy shall be sustained in any court of law or equity until after an award, on demand of either party, shall have been made by arbitration in the manner hereinbefore provided, nor unless such suit or action shall be commenced before the expiration of six months next ensuing after the loss; and, unless such suit or action shall be commenced within the said time, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute to the contrary 'notwithstanding.' That this action was not commenced within six months from the date upon which said alleged loss occurred; that the said suit was commenced on March 24, 1888. And defendant for further answer alleges that the policy of insurance so issued, contained the following covenant, viz: 'Assured's application, of even number and date herewith, on file in the office of the company, in Chamberlain, Dakota, is hereby referred to as a part hereof, and is a warranty on the part of assured, and the basis upon which this insurance

is written.' That said application referred to in said policy contained the following provision: 'The statements above made by me, and answers to the questions above given, are true, and a warranty on my part, and are the basis upon which I ask hail insurance, by the Dakota Fire & Marine Insurance Company, on the crops herein described.' Defendant avers that said application contained the following questions and answers, viz: 'Are your lands incumbered? If yes, for how much? Answer. $300. What is the land worth per acre? A. $20. Are the crops on the above-described land mortgaged or otherwise incumbered? If so, for how much? A. No.' Defendant avers that each of said questions and answers was material information to be known by the defendant, in order to determine the desirability of the risk, and the rate of premium to be paid therefor. And defendant, upon information and belief, avers that the said land was incumbered in excess of $300, and that the said land was not worth $20 per acre, or in any sum greater than $10 per acre, and that the crop described on said land was mortgaged and incumbered, and that defendant made false answers to each of said questions; that in truth and fact the said real estate was mortgaged by two mortgages, amounting to something like $1,110, prior to 1884, and that said real estate was also mortgaged to F. R. Fulton, about November, 1884, in an amount greatly in excess of $300, all of which was in full force at the time of issuing of said policy; that in truth and in fact there was a chattel mortgage upon said grain to F. R. Fulton, to secure a sum of about $700, which mortgage was a lien upon said growing grain, and that there were other chattel mortgages upon said grain in force at the time of issuing said policy; that by reason of such false statements the said policy was void. And defendant for further answer, and by way of counter-claim, alleges that on the dates hereinafter mentioned the defendant was and is a corporation organized under the laws of the territory of Dakota; that on the 1st day of June, 1885, the said plaintiff, W. E. Johnson, made, executed, and delivered to this defendant his certain promissory note in words and figures as follows, viz: '$70. For value received, I promise to pay to the Dakota Fire & Marine Insurance Company or order

seventy dollars, at their office in Chamberlain, Dakota, on the 1st day of October, 1885, with interest at the rate of ten per cent. per annum, without interest if paid thirty days before due. Dated this 1st day of June, 1885, W. E. JOHNSON. Whole number of acres insured is one hundred. Quarter section No. 20, twp. No. 154, range No. 54, county of Grand Forks. P. O. Larimore. Strong & Treat, Agts. No. 514.' That the defendant is now the owner and holder of said promissory note, and that the amount is now due and wholly unpaid. Wherefore defendant demands judgment against the plaintiff for his costs and disbursements, and for judgment upon said promissory note in the sum of $70, with interest at ten per cent. from June 1, 1885."

The action was tried by the court without a jury, and the trial court made and filed its findings of fact and law upon which judgment was entered in favor of the plaintiff for the amount of the claim, less the sum due on the premium note, which is pleaded as a counter-claim. Defendant appeals from the judgment. A bill of exceptions was settled, and a motion for a new trial was denied. The findings of fact are as follows: "That the defendant made, issued, and delivered to the plaintiff its insurance policy as set forth in the complaint herein and that the application for said insurance policy, signed by the plaintiff, is the application set forth in said complaint, and attached thereto as part thereof, and marked 'Exhibit B.' That the following answer to the following question in the said application was at the time the same was written untrue and false, to-wit: 'Question. Are your lands incumbered? If yes, for how much? Answer. Three hundred dollars.' That the said lands were at the same time incumbered for an amount exceeding one thousand dollars; that the following answer to the following question in said application was at the same time untrue and false, to-wit: 'Question. Are the crops on the above-described land mortgaged or otherwise incumbered? If so, for how much? Answer. No.' That the crops on the said land were in fact at said time mortgaged for a greater sum than seven hundred dollars; that one Strong was the agent of the defendant for the purpose of taking applications for hail insurance in Grand Forks county, Dak., and forwarding the same to the defendant company at the time

this application was taken; that the answers to said questions were inserted in said application by the said Strong; that the plaintiff answered truthfully each of said questions, but that said questions were erroneously and incorrectly inserted in said application by said Strong before the signing of said application; that after the said application had been written out the same was signed by the plaintiff without reading the same, or requesting the same to be read to him; that at same time plaintiff could readily read and write; that defendant company did not have any knowledge or notice of the acts of Strong or of the plaintiff in the making out of said application, and did not know that said application had been read by or in the hearing of said plaintiff, except such notice and knowledge as would be imputed to the defendant by the notice to and knowledge of Strong, its said agent, who had notice and knowledge of said facts; that upon the receiving of the said application the defendant accepted the same, and sent its policy directly to the plaintiff, with a correct copy of the application indorsed upon the back of said policy, and that in issuing said policy defendant relied solely upon the application in the form as it actually existed, and in the form in which it was signed by plaintiff; that the plaintiff knew that said Strong could not issue not issue policies, and knew that the defendant would act upon the application in the form in which he signed it, and that the said Strong would send the application as it existed to the company, and also knew that the company would send the policy, in the event that they accepted the application, directly to the plaintiff; that the plaintiff received said policy, with a copy of the application indorsed on the back thereof, during the latter part of May, 1885, and retained the same up to the date of bringing suit, and did not at any time before or after the loss make any objection to the application as copied on the back of said policy, or ask any corrections to be made in said application; that the plaintiff read a portion of his policy soon after the same was received, and discovered that the property was not correctly described, and thereupon took the same to an attorney, and took advice upon the validity of the policy on account of the said misdescription; that the plaintiff never made

any proof of loss which was required by the terms of said policy; that the defendant has waived proofs of loss by refusing to pay the said loss upon other grounds, and by a failure to make objection promptly and specifically upon the ground of failure of proof; that on the 15th and 28th days of July, 1885, the said 100 acres of wheat was damaged by hail, and that the plaintiff's loss sustained thereby is in the sum of $1,375.04; that there is due the defendant upon the promissory note described in the counter-claim the sum of $98.50; that the plaintiff made and sent by registered mail to the defendant a statement of each of said losses, on the 15th and 28th days of July, 1885, not sooner than five nor later than ten days thereafter, respectively; and that said wheat at the time of each of said losses was yet green and not ripe; that the defendant has never made any written request that the plaintiff submit the amount of the losses, or any of them, to arbitration, but that the plaintiff, on or about the 7th day of August, 1885, made to the defendant a written request that the amount of said losses be submitted to appraisers, but that said defendant neglected to submit said losses to appraisers, and did not comply with the written request of said plaintiff in that regard; that the loss herein sued upon occurred in July, 1885; that this action was not commenced against the defendant until March, 1888; that there is no notice upon the face of the policy calling the plaintiff's attention to the fact that a copy of the application is indorsed upon the back thereof, nor did plaintiff have actual notice that a copy of said application was indorsed upon the back of said policy until after this suit was brought; that immediately upon signing said application the same was delivered by the plaintiff to the said Strong, and by him forwarded to the defendant; that, at the time of the service of defendant's answer to the plaintiff's complaint in this action, the defendant had full knowledge of all the facts constituting the grounds of forfeiture of said policy and with such knowledge, by the way of counter-claim in their said answer, defendant seeks to recover from the plaintiff the amount of the premium note given by said plaintiff as a consideration for the issuance of said policy, and by so doing has waived all forfeiture of said policy."

The appellant assigns the following errors: "(1)  The court erred in permitting the plaintiff to testify, over the objection of the defendant, that he answered each of the questions in the application truthfully, and that Strong falsely inserted the answers in the application, and in allowing plaintiff to vary the terms of a written application by oral testimony.   (2)  The court erred in permitting the plaintiff to answer the following question over the objection of the defendant: 'Question.  Now, you may state if anything was said by you to Mr. Strong on this subject of incumbrance upon your land prior to making out and signing this application?'   (3)  The court erred in denying defendant's written motion for judgment upon the evidence.   (4) That upon the findings of the court the plaintiff is not entitled to judgment, and the court erred in rendering judgment upon said findings.   (5)  The court erred in denying defendant's motion for a new trial."

We have carefully examined the testimony contained in the record, and find that the findings of fact as made by the trial court are amply sustained by the evidence.   The policy provides that "no suit or action for the recovery of any claim for loss or damage under this policy shall be sustained in any court of law or equity unless such suit or action shall be commenced before the expiration of six months next ensuing after the loss." This action was not brought within the time limited, and would have been barred at common law for that reason, but the stipulation limiting the time is void under a provision of our Civil Code.   Comp. Laws, § 3582.   There is no substantial conflict in the testimony.   The main questions arise upon evidence not controverted, and upon the facts as found by the trial court. Do such facts and such evidence warrant the judgment in plaintiff's favor?   This question is far from being one of easy solution in view of the irreconcilable conflict found in the authorities bearing upon the various points involved.

It is conceded that the answers contained in plaintiff's written application for the insurance, which relate to incumbrances upon the land and upon the crop insured, are untrue; but the learned counsel for the respondent contends that such answers relate to matters wholly immaterial, and, as counsel claims, do

not constitute substantial warranties. It certainly is not apparent to this court that representations as to incumbrances, which in fire risks are conceded to be important and material, are equally so when the insurance is a hail risk. Nevertheless we must hold that the parties have a right to make a stipulation to the effect that any given representation as to a matter of fact made as a basis for the contract shall be deemed a warranty, and a material part of the contract. The application declares that "the statements made by me, and answers to questions above given, are true, and a warranty on my part, and are the basis upon which I ask hail insurance by the Dakota Fire & Marine Insurance Company on the crops herein described." The policy in question expressly refers to the above in the following language: "Assured's application, of even number and date herewith, on file in the office of the company in Chamberlain, Dakota, is hereby referred to as a part hereof, and is a warranty on the part of the assured, and the basis upon which this insurance is written." The statements contained in the application with respect to the incumbrances are therefore expressly made a part of the contract. The policy also declares "that any misrepresentation or false statement or concealment of facts in the application shall operate to render the policy void." Under these clear stipulations of the contract it does not, in our opinion, matter whether the representations in the application as to the incumbrances on the property are or are not material in fact. If not intrinsically material, they have been made so by express agreement of the parties; and that agreement, under the provisions of the Code, must prevail. Section 4163, Comp. Laws, reads as follows: "A policy may declare that a violation of specified provisions thereof shall avoid it; otherwise the breach of an immaterial provision does not avoid the policy." See id. § 4159, and Wood, Ins. § 137.

But it is further contended by respondent's counsel that defendant is estopped from claiming a forfeiture of the policy on account of the false answers as to incumbrances contained in the application for the reason that such answers were wholly unauthorized by the plaintiff, and were falsely written into the application by E. E. Strong, the soliciting agent, despite the

fact that he (Strong) was fully and truthfully informed by the plaintiff as to the incumbrances. The fact of deception practiced by the agent is not questioned; but who shall shoulder the consequences of such deceptions? is a question much mooted in the adjudicated cases, and one which has given this court no little difficulty. For whom was Strong acting, and who was he representing, when soliciting and taking plaintiff's application for the insurance? The earlier cases held quite uniformly that, where the insured signed a written application as a basis for the contract of insurance, he adopted all of its contents, and was bound by it, and that if, by his request or permission, the solicitor of the insurance acted for him in filling out the application, such solicitor was so far forth the agent of the insured, and not the agent of the company. Some courts still adhere to this holding, but the decided weight of authorities is to the contrary. Wood, Ins. § 139, and authorities cited in note 1; Miller v. Insurance Co., 31 Iowa, 216; Insurance Co. v. Eddy, 55 Ill. 213; Insurance Co. v. Wilkinson, 13 Wall. 222; Insurance Co. v. Mahone, 21 Wall. 152; Eams v. Insurance Co., 94 U. S. 621; Rowley v. Insurance Co., 36 N. Y. 550; May, Ins. § 143, and authorities cited; Kausal v. Association, 31 Minn. 17, 16 N. W. Rep. 430. In the case last above cited the supreme court of Minnesota uses the following language, which voices the result of the later authorities: "Agents for an insurance company, authorized to procure applications for insurance, and to forward them to the company for acceptance, must be deemed the agents of the insurers in all that they do in preparing the application, or in any representations they may make as to the character or effect of the statements therein contained. Hence, when such agent, either by his direction or direct act, makes out an application incorrectly, notwithstanding all the facts are stated to him by the applicant, the error is chargeable to the insurer, and not to the insured. This is the rule in case of 'mutual' as well as 'stock' or 'proprietary' companies. The rule is not affected or changed by a stipulation inserted in the policy subsequently issued that the acts of such agent in making out the application shall be deemed the acts of the insured, and not of the insurer. Such stipulation does not convert acts

done for the insurer into the acts of the insured. The admission of the verbal testimony to show that the application was filled up by the agent of the company, and that the facts were correctly stated to him, but that he, without the knowledge of the insured, misstated them in the application, is not in violation of the rule that verbal testimony is not admissable to vary a written contract. It proceeds upon the ground that the contents of the paper was not the statement of the applicant, and that the insurance company, by the acts of their agents, is estopped to set up that it is the representation of the insured." A line of cases hold that, where the solicitor of insurance is expressly limited in his authority, in the manner of taking the application, and where such limitation is brought home to the knowledge of the insured at the time the application is signed, the insured is bound by the limitation. Appellant's counsel labor to show that this case comes within the principle of such cases. We cannot assent to this view of the facts. It is true that defendant's agent, who took the risk in question, had only the authority to solicit the risk, and procure and forward the application of the plaintiff, and that the plaintiff fully understood that such was the nature and limit of the agent's powers in the premises. But there is nothing in this case tending to show that there was any restrictions whatever upon the agent's authority in the matters intrusted to his charge, viz., the matter of soliciting and procuring the application for the insurance in question. As to such duties the agent had, *prima facie*, plenary powers co-extensive with the matter intrusted to him, and such powers cannot be narrowed by limitations not communicated to the insured. See May, Ins. § 144, note 1; Miller v. Insurance Co., 31 Iowa, 232.

The defendant sent its policy direct to the plaintiff, and the latter had possession of it some months prior to the loss. A copy of the application, containing the false answers as written by the agent, was indorsed upon the back of the policy, but such indorsement was not referred to in the body of the policy. The trial court found that the plaintiff did not at any time object to the answers as stated in the application, or request the defendant to correct the same. The evidence, however, is con-

clusive that the plaintiff did not in fact know that a copy of the application was indorsed upon his policy, nor discover the errors in the application respecting the incumbrances, until the day preceding the trial. Under these circumstances, the question arises whether the plaintiff, despite the contrary fact, is not conclusively presumed to have read and become acquainted with the contents of the policy, including the copy of his application for insurance indorsed on the policy. If such is the presumption of law, then the further question arises whether the plaintiff is guilty of such laches in not seeking a correction or reformation of the contract as will defeat his recovery upon the policy. It is well settled that, where an insurance policy is delivered to the applicant, he is presumed to know its contents, and cannot evade a forfeiture for a violation of its provisions on the ground that he never read it. Wood, Ins. § 503; Smith v. Insurance Co. (Dak.) 43 N. W. Rep. 810; Hankins v. Insurance Co. (Wis.) 35 N. W. Rep. 34; Cleaver v. Insurance Co., (Mich.) 32 N. W. Rep. 660. And where a paper is physically annexed to the policy, or indorsed thereon, and adopted in the policy as a part thereof, the same will form a part of the insurance contract. Wood, Ins. § 137, notes 1, 2, 3; also § 149, id.; Murdock v. Insurance Co., 2 N. Y. 210; Duncan v. Insurance Co., 6 Wend. 488; Emerson v. Murray, 4 N. H. 171; Roberts v. Insurance Co., 3 Hill, 501. The case of Insurance Co. v. Fletcher, 117 U. S. 519, 6 Sup. Ct. Rep. 837, very closely resembles the case at bar as to the feature under consideration. Mr. Justice Field, in delivering the opinion of the court, said: "There is another view of this case equally fatal to a recovery. Assuming that the answers of the assured were falsified, as alleged, the fact would be at once disclosed by the copy of the application annexed to the policy, to which his attention was called. He would have discovered by inspection that a fraud had been perpetrated not only upon himself, but upon the company, and it would have been his duty to make the fact known to the company. He could not hold the policy without approving the action of the agents, and thus becoming a participant in the fraud committed. The retention of the policy was an approval of the application, and of its statements." Citing Insurance Co. v.,

Neiberger, 74 Mo. 167; Richardson v. Insurance Co., 46 Me. 394. The application was made a part of the policy in express terms, and a copy thereof was indorsed upon the policy. This juxta-position of the application with reference to the policy makes the application a part of the policy, within the rule established by the authorities above cited. Upon receiving the policy with copy indorsed thereon, the plaintiff is legally chargeable with notice and knowledge of the entire terms of the insurance con-tract, and he is estopped from denying such knowledge. It was the plaintiff's duty to have taken steps at once, upon receiving the policy, to have the same corrected or rescinded. He did not do so, and, by his silence when required to speak, he be-came constructively a participant in the original fraud of the agent, and thereby forfeited his right under the policy; and, un-less defendant has waived such forfeiture, the plaintiff must fail to recover.

Applying the law to the facts, the policy in question was de-feated in its very inception; and, by reason of plaintiff's silence as to the fraud, the policy never attached to the risk. Comp. Laws, § 4164. But a forfeiture may be waived by a party en-titled to its benefit. In this case there is no claim of an express waiver. The trial court found "that, at the time of the service of defendant's answer to the plaintiff's complaint in this action, the defendant had full knowledge of all the facts constituting the grounds of forfeiture of said policy, and, with such knowledge, and by way of counter-claim in its said answer, defendant seeks to re-cover from the plaintiff the amount of the premium note given by said plaintiff as a consideration for the issuance of said policy, and by so doing has waived all forfeiture of said policy." We think this conclusion of the trial court is correct. To counter-claim upon a premium note is equivalent to an independent action by the defendant against the plaintiff to recover the stipulated con-sideration for carrying the risk. After full knowledge that the claim was fraudulent in its inception, and consequently that the policy was voidable at the option of the company, the latter saw fit to make demand of its premium by a counter-claim in the answer. It is well settled by the adjudications that the receipt of premium after knowledge of forfeiture operates to waive the

forfeiture, also that an extension of time upon a premium note after the due-day of the note has the same effect upon a forfeiture caused by non-payment of the note at maturity. We think that this case comes within the principle of these cases. The demand for judgment upon a note given for the premium is a formal recognition by the defendant, made after full knowledge of the facts which would defeat the policy in its inception, of the original binding force of the contract. The assertion of the demand assumes the original validity of the policy, and such assumption is made after knowledge that the policy was voidable for a fraud which would defeat both the note and the policy at defendant's option. We hold that this waives the forfeiture caused by the silence of the plaintiff as to the false answers in the application.

The case would have been widely different if the defendant had elected to stand only on the other defense pleaded in the answer to the complaint. The defense that the plaintiff sued too late, or that the requisite notice of loss, or preliminary proofs of loss were not furnished, are all and singular such defenses as do not go to the original validity of the note and policy, and, whether any and all of such defenses are true or untrue, would not affect the validity of the note or the policy as original contracts. It follows that pleading the counter-claim would have been entirely proper, if set up only in connection with the last-mentioned defenses, and would not have operated to estop the defendant of availing itself of such defenses. But the defendant has not seen fit to pursue that course, and must accept the consequences of the election it has made to sue for the premium with full knowledge of the forfeiture of the policy for fraud in its inception.

The policy provides that the loss will be paid according to the terms and conditions of the policy, "but not until requisite proofs, duly certified and sworn to by assured and one disinterested party, are received at the office of the company in Chamberlain, Dakota." The insurance was for the term of "six months, from the 6th day of May, 1885, at noon, to the 6th day of November, 1885, at noon." The policy further provides: "All loss and damage under this policy shall be due and payable

between the 20th day of November and the first day of December of the year in which the loss occurs." The fourth finding of fact is as follows: "That the plaintiff never made any proof of loss which was required by the terms of said policy." The fifth finding is as follows: "That the defendant has waived proofs of loss by refusal to pay the said loss upon other grounds, and by a failure to make objection promptly and specifically upon the ground of failure of proof." It is elementary that where an insurance policy requires the insured, in the event of a loss, to furnish certain preliminary proofs of loss, a failure to do so, unless waived, will operate to defeat a recovery under the policy. The time within which proofs are to be furnished is not stated, in terms, in the policy under consideration. Such proofs must therefore, under the law, be furnished within a reasonable time, in view of all of the circumstances of the case. Defendant's counsel claims that the time within which the proofs are to be furnished is practically settled by the policy, in view of the fact that all claims for damages become "due and payable" between November 20th and December 1st of the year in which the loss occurs. This position seems to be reasonable and well taken. It would certainly be unreasonable to hold that the defendant who is entitled to receive the proofs of loss before paying the loss, should not be entitled to receive such proofs until subsequent to the date when the loss would be absolutely due and payable by the terms of the policy. But aside from this, in view of the perishable nature of the insured property, we should hold, under a hail insurance policy upon growing grain which requires proofs to be furnished as a condition precedent to the payment of the loss, that such proofs must be furnished within a reasonable time after the loss, and within time to enable the company to examine the property, and determine upon the amount of its liability, if liable, before the grain disappeared as a result of natural causes. In this case the hail-storms which did the damage occurred in the month of July. It would be obviously unreasonable to hold that the time for furnishing proofs of loss could be prolonged after November 20th of the same year. After that date the proofs would be of no value; for it would then be too late in the season to investigate the loss

with any reasonable prospect of reaching a sound conclusion as to the fact or as to the extent of any loss which might have occurred in the preceding month of July. We therefore hold that the time for furnishing proof of loss in this case expired at or prior to November 20, 1885.

It is not claimed that the defendant, either expressly or by conduct, waived the proofs of loss, or that anything was said or done by any of the defendant's agents calculated to mislead the plaintiff, or put him off his guard as to the duty of furnishing the required proofs of loss until more than four months after the loss occurred, and not until December, 1885, at which date the letters were written which are now claimed as a waiver. The letters are as follows:

"Exhibit A. Larimore, Dakota, Dec. 16, 1885. The Dakota Fire and Marine Insurance Co., Chamberlain—Gentlemen: At the instance of Mr. W. E. Johnson, I write you in reference to his policy No. 514 for hail insurance in your company. Mr. Johnson has complied with the conditions imposed by your agent when here, and sent in his papers quite a long time ago. He also saw your general manager, Mr. English, in Grand Forks, about November 10th last, who promised to let him hear from the company upon his return. No word has yet been received by Mr. J., and the time, December 1st, wherein the policy promised final settlement for any loss shall be made, has passed. Mr. Johnson is thus kept in ignorance of your intentions, and is without a word of any kind from you. He desires me to say, if settlement for his loss is not made before January 1st prox., he will enter suit to bring about the same. Very respectfully, W. N. ROACH."

"Exhibit B. Chamberlain, Dakota, Dec. 22, 1885. W. N. Roach, Esq., Larimore, Dakota—Dear Sir: Replying to yours of the 16th inst. in regard to loss under policy 514, issued to W. E. Johnson, we beg to say we are in possession of some facts in regard to this insurance which, unexplained, would lead us to reject the loss, and resist its payment in court, if necessary, though this position we do not yet take, and hope we shall not be compelled to. Will give you definite answer as soon as, in due course of mail, we can receive answer to letter already

written for further information in reference to this case. We do not ask you to wait on us, but suggest that, upon receipt of information above referred to, if our attorney advises us that we are probably liable, or even that he is in doubt as to our liability, we shall at once adjust and pay the loss. Yours, truly, A. G. KELLAM."

Exhibit B is relied upon as the sole evidence of waiver. It was written more than four months subsequent to the loss, and more than one month, under our construction of the policy, after the time limited for furnishing the proofs had expired. The record does not disclose a case where defective proofs of loss have been forwarded to the company, and retained without objection, nor a case of mere delay, followed by a tardy furnishing of the proofs, but a case of an entire failure to make out or furnish the stipulated proofs within the time, or at all. Plaintiff's counsel cite Brink v. Insurance Co., 80 N. Y. 108; Titus v. Insurance Co., 81 N. Y. 410; O'Brien v. Insurance Co., 52 Mich. 131, 17 N. W. Rep. 726; Insurance Co. v. Kranich, 36 Mich. 289, and other authorities, sustaining the now well-established doctrine that after as well as before a breach in the condition of a policy of insurance requiring proofs of loss the company may waive the forfeiture caused by such breach either by "an express waiver, or by acts or conduct from which an intention to waive is expressly inferable." Brink v. Insurance Company, *supra*. And such waiver can be made without a new consideration, and by conduct which does not amount to an estoppel. Id. But in all of the cases cited, and in all others examined by the court where a waiver of forfeiture caused by non-service of proofs of loss has been held sufficient, there has been present the element of repudiation by the company of all liability under the policy for some reason other than the omission to furnish proofs of loss. Where, aside from non-production of proofs of loss, the company repudiates all liability, it would be useless and unavailing to furnish the proofs; and in such cases the insured is excused for their non-production. We are of the opinion that § 4179, Comp. Laws, declaring that " delays in the presentation to an insurer of notice or proof of loss, is waived, if caused by any act of his, or if he omits to make

objections promptly and specifically upon the ground," does not change or enlarge the well-settled rule at common law, and has no application to a case of non-service of proofs of loss.   We are therefore of the opinion that the trial court was mistaken in assuming that plaintiff's omission to serve proofs of loss was waived by defendant's failure to make objection promptly and specifically on that ground.

The remaining question is this:   Has defendant waived the forfeiture caused by the omission to furnish proofs of loss by its acts or conduct since the forfeiture occurred?   The position is taken by plaintiff's counsel that the correspondence between plaintiff's agent and defendant, found in Exhibits A and B, contains evidence of the waiver of the forfeiture caused by non-service of the proofs of loss.   We think counsel are correct in this position.   In the letter of December 22, 1885, allusion is made to certain facts within defendant's knowledge which, if unexplained, would lead defendant to reject the loss, and resist its payment in court.   What particular facts are here referred to does not appear by the letter, or elsewhere in the record.   But it is quite clear that such facts could have nothing to do with the non-service of proofs of loss.   No letter of inquiry would have been necessary to elicit further information concerning the fact of non-service of proofs of loss.   That fact was well known to defendant when the letter, Exhibit B, was written, and was of a nature not susceptible of explanation, but was a fact complete in itself without explanation.   On December 22d, when defendant's letter was written, it was already too late, under the policy, to furnish the proofs of loss, and none had been furnished.   This default was fatal to plaintiff's claim, if defendant saw fit to insist upon it.   Whether this forfeiture would or would not be insisted upon as an excuse for non-payment of the loss was a question turning upon defendant's views of duty and of business policy, and was not a matter concerning which defendant would need new light or information to be sought for and obtained by correspondence. Again, it appears from defendant's letter that the defendant was intending to submit the question of its liability to its attorney as soon as, in due course of mail, it should receive cer-

tain information for which it had written. But, as we have seen, further information was not required to enable an attorney to form an intelligent opinion as to the question of defendant's liability, so far as the non-service of proofs of loss would affect the question of liability.

Our conclusion is that defendant had written for, and was in quest of, information relating to some matters in regard to the insurance other than the non-service of proofs of loss. This view is strengthened by the unqualified promise contained in defendant's letter to "at once adjust and pay the loss" if the information already written for should turn out to be of a nature which should create a doubt of defendant's non-liability in the mind of its attorney. But it appears by the letter of December 22, 1885, that defendant was at that time already in "possession of some facts in relation to this insurance" which would lead the defendant to "reject the loss and resist its payment in court," unless such facts should be explained by information already written for, and expected to reach the defendant by due course of mail, if it came at all. Furthermore, by this letter defendant promised to give plaintiff a definite answer "in reference to the case," as soon as, "in due course of mail," the defendant received an answer to its letter of inquiry. Suit was not brought upon the claim for more than two years after the date of defendant's letter, but in that interval of time the defendant did not see fit to communicate with the plaintiff, nor send its promised "definite answer" to plaintiff's demand of payment. From defendant's long silence, we infer that its original conclusion to reject the claim, which had been reached in December, 1885, had not been changed by any fact that came to its knowledge after that date, in reply to its letter of inquiry or otherwise. Briefly summed up, the position is as follows: Defendant, on or prior to December 22, 1885, had conditionally decided to reject the claim on certain grounds which it did not disclose to plaintiff, but which grounds had nothing whatever to do with the non-service of proofs of loss, and on said date defendant refused payment of the claim on such other grounds. The refusal to pay on other grounds brings the case within the rule of the authorities already cited. The court is of the opin-

ion that the whole tenor of the letter of December 22d, including defendant's conditional promise to "adjust and pay the loss," was calculated to induce the plaintiff to believe, and did induce him to believe, that the forfeiture as to proofs of loss would not be insisted upon by the defendant. This introduces an element of estoppel, and the court hold that defendant is estopped by its letter from setting up the forfeiture. Good faith on defendant's part required that defendant should have either remained silent, or informed plaintiff that it would, if sued, insist upon this forfeiture, if such was in fact, its purpose. By so doing, plaintiff might have avoided the large expense incident to the prosecution of a suit based upon the loss. Plaintiff's letter of December 16th was a demand of payment of the loss, and contained a distinct notification to defendant that suit would be entered on the claim if it was not settled before January 1, 1886. If defendant intended to allege the then existing forfeiture as to proofs of loss as a defense to an action upon the policy, good faith demanded that it should inform the plaintiff of its purpose, or keep silent. It was bad faith on defendant's part to so couch its reply to plaintiff's letter as to lead plaintiff to believe that this particular defense, which then existed, would not be pleaded. This brings the case within the rule of Brink v. Insurance Co., *supra.* It follows that the defendant is estopped from pleading the forfeiture as to proofs of loss. The judgment should be affirmed. It is so ordered. All concur.

CORLISS, C. J., having been of counsel, did not sit; RODERICK ROSE, judge of the fifth judicial district, sitting by request.

Rehearing denied.