SMITH ET AL., Respondents, v. CONTINENTAL INS. CO., Appellant.

**1. Insurance — Policy — Forfeiture — Breach of Condition.**

Where a policy of insurance provided that it should become void on assured's mortgaging the property without the consent of the company indorsed on the policy by the superintendent, the company is not estopped from insisting on a breach of this condition from the fact of its mere soliciting agent giving the assured to understand at the time he took the application that the giving of mortgages would not affect the policy when the company by its general officers had no knowledge of the understanding until after suit had been commenced.

**2. Same.**

A condition in a policy rendering it void on procuring additional insurance without the consent of the company indorsed on the policy by the superintendent, is not waived by an agent of the company, whose business was to select soliciting agents, receiving notice thereof from the assured, where such agent had never given permission for procuring the insurance and his agency had terminated a few days before the mailing of the notice.

**3. Same — Waiver — Evidence.**

Where the premium has been earned prior to a forfeiture, its subsequent receipt is not inconsistent with a defense based on the forfeiture, nor is it evidence of a waiver thereof although the period for which the policy was given had not expired.

(Argued May 20, 1889; opinion filed October 10, 1889.)

APPEAL from district court, Cass county; Hon. W. B. Mc-Connell, Judge.

*Ball, Wallin & Smith,* for appellant.

The plaintiff had violated two provisions in his policy, that prohibiting additional insurance without the written consent of the defendant indorsed on the policy; and the other with reference to incumbering the property. Either of these conditions, when broken, operated to render the policy void. These stipulations are always regarded as material and with favor. May, Ins., § 364. See, also, C. C., § 1539.

There was nothing in the talk between the respondent Smith and the agent that would relieve him from the obligations of his policy.. There was no evidence of any waiver as to the chattel mortgage whatever. The court also erred in submitting that question to the jury.

There was none of the elements of an equitable estoppel in the

case. May, Ins., § 507; Shimp v. Cedar Rapids Ins. Co., 16 N. E. Rep. 229; North-Western M. L. Ins. Co. v. Anerman, 10 id. 225. The case of Smith v. St. Paul F. & M. Co., 3 Dak. 80, is not in point. But underlying this question of a pretended waiver, there is the fact that the testimony fails to bring home to the company notice of the breaches at any time. Therefore, the opportunity to waive the breaches of the policy was never presented to the company. The motion to direct a verdict should have been granted. On the subject of waiver, see 2 Dak. 114; Cleaver v. Traders' Insurance Co., 32 N. W. Rep. 660; Kite v. Commercial Union, 10 N. E. Rep. 518; Globe Mutual Ins. Co. v. Wolff, 95 U. S. 326, Book 24 L. C. P. Co. 387; Moore v. State Ins. Co., 34 N. W. Rep. 183; Carpenter v. Providence W. I. Co., 16 Pet. 494; 4 How. 184.

*Greene & Hildreth*, for respondents.

The defendant is estopped, under the undisputed facts, from claiming a forfeiture on account of the execution of any chattel mortgages on the property covered by this insurance. Ins. Co. v. Young, 58 Ala. 476; Siltz v. Hawkeye Ins. Co., 29 N. W. Rep. 605; Jordan v. States Ins. Co., 64 Ia. 216, 19 N. W. Rep. 917; Boetcher v. Hawkeye Ins. Co., 47 Ia. 253; Miller v. Mutual Benefit Life Ins. Co., 31 id. 216; Stone v. Hawkeye Ins. Co., 28 N. W. Rep. 47; Kruger v. Western F. & M. Ins. Co., 13 Pac. Rep. 156; Woodruff v. Imperial Ins. Co., 83 N. Y. 140; N. Y. Central Ins. Co. v. Nat. Pro. Ins. Co., 20 Barb. 476; Hibernia Ins. Co. v. O'Connor, 29 Mich. 241; Winchester Ins. Co. v. Earle, 33 id. 151; Ins. Co. v. Mahone, 21 Wall. 152; Mitler v. Ins. Co., 12 id. 285; Ins. Co. v. Slaughter, id. 404; Ins. Co. v. Wilkinson, 13 id. 222; Peoria Ins. Co. v. Perkins, 16 Mich. 173; Continental Ins. Co. v. Horton, 28 id. 173; Mich. St. Ins. Co. v. Lewis, 30 id. 45; Peoria Ins. Co. v. Hall, 12 id. 202; Aurora F. & M. Ins. Co. v. Kranich, 36 id. 288; Niagara F. Ins. Co. v. Brown, 12 West. Rep. 817; Ætna Ins. Co. v. Olmstead, 21 Mich. 252; North B. & M. Ins. Co. v. Steiger, 16 N. W. Rep. 96; Mullin v. Vermont Mutual F. Ins. Co., 2 New Eng. Rep. 483; Thomas v. Hartford Ins. Co., 2 West. Rep. 527; Ransel v. Ins. Asso. (Minn.), 16 N. W. Rep. 430; Liverpool & L. & G. Ins. Co. v.

Ende, 65 Tex. 118; Wheeler v. Traders' Ins. Co. (N. H.), 1 New Eng. Rep. 322; Yates v. Penn. F. Ins. Co., 10 Hun, 489; Breckinridge v. Am. Ins. Co., 4 West. Rep. 569; Phœnix Ins. Co. v. LaPoint, 5 id. 512; Ind. Ins. Co. v. Hartwell, 100 Ind. 566; Wood, Ins., §§ 400, 402, 403.

The defendant waived its right to claim a forfeiture on account of the additional insurance. Hamilton v. Home Ins. Co., 7 S. W. Rep. 266; May, Ins. 370; Haywood v. Ins. Co., 52 Mo. 181; Pelkington v. Ins. Co., 55 id. 172; Baile v. Ins. Co., 73 id. 371; Breckinridge v. Ins. Co., 87 id. 62; Webster v. Phœnix Ins. Co., 36 Wis. 67; Phœnix Ins. Co. v. Spiers, 8 S. W. Rep. 456; Ins. Co. v. Shea, 6 Bush, 174; Wood, Ins., §§ 358, 364, 371, 400, 401, 402, 403, 407; Ins. Co. v. Lyons, 38 Tex. 253; Pitney v. Glens Falls Ins. Co., 65 N. Y. 1; Ins. Co. v. Wilkinson, 13 Wall. 222; Ins. Co. v. McCain, 96 U. S. 86; Cobb v. Ins. Co., 11 Kan. 93; Potter v. Ontario Ins. Co., 5 Hill, 147; Planter Mutual Ins. Co. v. Lyone, 38 Tex. 253; Winchester Ins. Co. v. Earle, 33 Mich. 147; Cannon v. Home Ins. Co., 11 N. W. Rep. 11; Penn. F. Ins. Co. v. Kittle, 39 Mich. 51; Gans v. St. Paul F. & M. Ins. Co., 43 Wis. 113; Martheson v. N. British Ins. Co. (Mich.), 31 N. W. Rep. 297; Hadley v. N. H. Ins. Co., 55 N. H. 110; Westlake v. Ins. Co., 14 Barb. 406; Farmers' Ins. Co. v. Taylor, 73 Pa. St. 342; Goodall v. N. E. & C. Ins. Co., 25 N. H. 169; Dayton Ins. Co. v. Kelly, 24 Ohio St. 345; Howitz v. Equitable Ins. Co., 40 Me. 557; Ins. Co. v. McDowell, 50 Ill. 120; Geib v. International Ins. Co., 1 Dill. 443.

Forfeitures are so odious that they will be enforced only when there is the clearest evidence that such was the intention of the parties. May, Ins., § 361; Chicago Life Ins. Co. v. Warner, 80 Ill. 415; C. C., § 812.

The facts with reference to receiving the premium bring the case clearly within the rule adhered to by this court in Smith v. St. Paul F. & M. Ins. Co., 13 N. W. Rep. 355. See, also, Tuckerman v. Bigler, 46 Barb. 375; Matthews v. Ins. Co., 40 Ohio St. 135; Am. Ins. Co. v. Henly, 28 Ind. 64; Black v. Ridgway, 131 Mass. 80; Randolph, Com. Paper, § 539; Campbell v. Adams, 38 Barb. 132; Walkenburgh v. Lenox Fire Ins. Co., 5 N. Y. 465; Griffey v. N. Y. C. Ins. Co., 3 East. Rep. 130; American

Ins. Co. v. Stoy, 41 Mich. 385; Jolliffe v. Madison Ins. Co., 39 Wis. 111.

TEMPLETON, J.    This action is based upon a fire insurance policy issued by defendant, and bears date July 29, A. D. 1885. The face of the policy was $3,500, the term five years, and a portion of the property insured consisted of a granary, and a quantity of grain therein.   The risk upon the granary was $500, and the risk upon the grain was $2,000.   On the 29th of October, A. D. 1887, the granary, and four thousand bushels of wheat and two thousand bushels of oats were destroyed by fire.   It was conceded that the value of the property destroyed exceeded the amount of insurance thereon.

The policy was issued to Mr. Smith, but subsequently, and before the loss, was assigned to Mr. Hitchcock, and made payable to him, so far as his interest might appear.   Hitchcock held a mortgage covering the real estate upon which the granary stood.   He had no interest in the crops or grain.

The premium upon said policy was $58.18, of which $14.54 was paid in cash when the policy was issued, and the balance was settled by Mr. Smith giving his note for $43.64, payable on the 1st day of November, A. D. 1886.   The policy contained the usual clause suspending its operation during the time any note given for premium should remain past due and unpaid, and also the following provisions:  "* * *  And it is stipulated and agreed, * * * if the assured, without written permission hereon, shall now have, or hereafter make or procure, any other contract of insurance, whether valid or not, * * * or if the property shall hereafter become mortgaged or incumbered, * * * without consent indorsed hereon, then * * * this policy shall be null and void."

This policy is issued from the office of the company, at Chicago, Illinois, and it is stipulated that no agent or employee of this company, or any other person or persons than the superintendent of the western department, at Chicago, Illinois, shall have power or authority to waive or alter any of the terms or conditions of this policy, or to make indorsements hereon, and all agreements by the superintendent must be signed by him.

Two defenses were set up in the answer, and relied upon to defeat the action. The first defense alleges a breach of that condition in the policy regarding incumbrances; the second, a breach of that condition regarding additional insurance.

Plaintiffs admit that after the delivery of the policy, and before the loss, the plaintiff Smith gave eight chattel mortgages, each of which became a valid lien upon the grain described in the policy, and that the consent of the company, permitting such incumbrances, was never indorsed upon the policy. It is also admitted that plaintiff Smith, about two months prior to the loss, procured from another insurance company, to-wit, the Western Fire and Marine Insurance Company of Sioux Falls, Dak., a policy of insurance for the sum of $1,000, upon said grain, and that the defendant's consent to such additional insurance was never indorsed upon the policy in suit.

Plaintiffs claimed at the trial that those forfeitures had been waived by defendant, and introduced testimony which they insist tended to show such waiver. The facts which it is claimed constituted a waiver of the forfeiture arising from the giving of the chattel mortgages are, in brief, as follows: One Jed L. Angell was defendant's agent at Fargo, Dak., for the purpose of taking applications, forwarding them, delivering policies, and collecting premiums.

Angell took Smith's application for the risk in question, and at that time told Smith that the company cared nothing for incumbrances upon the chattels, and gave him to understand that mortgages of that character would not invalidate the policy. The policy was sent by defendant's superintendent to Mr. Angell, and by him, pursuant to instructions received from Smith, delivered to one Darling, who was Smith's agent for the purpose of receiving said policy, and caring for it. Smith never saw the policy until after the loss occurred.

Angell had no power to make insurance contracts, nor issue policies, and, so far as the case shows, had never assumed to have such power. This policy, in accordance with the rules and custom of the company, was issued from the office of the western department of the company, at Chicago, and was countersigned by R. J. Taylor the superintendent of said department, and, so far as

appears, is in the form ordinarily issued by said company on this class of risks. None of the officers or general agents of defendant had notice of Angell's statement to Smith concerning the effect of chattel mortgages upon the property insured until after this suit was commenced.

Under these facts, is the defendant estopped from claiming a forfeiture by reason of the execution of the chattel mortgages? We think not.

This is a very different case from that where a soliciting agent purposely or erroneously inserts false answers to questions in an application, the applicant stating the facts truthfully, and being innocent of fraud. In such a case the sub-agent is acting within the scope of his powers and duties — taking applications is his business, — and notice to him is notice to the principal, under well-settled rules of law. If Angell had been a general agent, — that is, if he had been authorized by the company to make contracts of insurance and issue policies, — he doubtless would have had implied authority to waive the effect of conditions in the policy inconsistent with existing facts, and possibly the effect of those inconsistent with facts subsequently arising, notwithstanding the limitations in the policy.

This was not a case of insurance by parol, consummated between Angell and Smith; and it is also to be noted that Smith's written application, accepted by the company, did not alone constitute the contract of insurance between the parties. The proposition just advanced has been clearly stated by a learned judge in the following language: "The position of the learned counsel for the appellants, that Deter's application for insurance, accepted by the respondent, constitutes the binding contract of insurance between the parties to it, exclusive of the policy, appears to us wholly untenable. The application is, in effect, for insurance by policy, and the premium note is in terms in consideration of a policy. If the application were accepted otherwise than by policy, then the application and acceptance constituted an inchoate and executory contract, executed and completed by the policy." Fuller v. Insurance Co., 36 Wis. 603. The policy having been delivered to the person appointed by Smith to receive it, he, under the facts of this case, was conclusively presumed to know its con-

tents; and, having accepted and retained it, he cannot now shield himself from the effects of violating its provisions under the plea that he never read it.    Hankins v. Insurance Co. (Wis.), 35 N. W. Rep. 34; Cleaver v. Insurance Co. (Mich.), 32 id. 660; Catoir v. Trust Co., 33 N. J. Law, 487.

These views are not in conflict with Insurance Co. v. Wells, 89 Ill. 82.    In that case the insurance company was held bound by the statement of the agent taking the application, which statement was, in substance, that if the building insured should become vacant it would not matter, and no notice thereof need be given the company, notwithstanding a contrary provision in the policy.    In that case, however, the policy was not delivered to the insured or his agent, but remained in the hands of the person taking the application until after the fire; and it was upon that express ground that the case was distinguished from Insurance Co. v. Webster, 69 Ill. 392.    The latter case is directly in point here.    The court says: "The evidence shows that the property insured, a dwelling-house, was vacated on the 12th day of January, and thereafter remained unoccupied until it was destroyed by fire on the 13th day of the ensuing February.    There is no evidence that notice of this fact was given to the company, or that its consent was indorsed on the policy.    The plaintiff, however, testified that the reason he did not notify the company that the premises were vacant and unoccupied was because the agent of the company told him, at the time the insurance was made, that it was not necessary to give notice if the house became vacant. The agent of the company swears that what he told the plaintiff was that if the house was not vacant for more than thirty days it was not necessary to give notice.    The court, at the instance of the plaintiff, instructed the jury upon this point that 'the neglect of Webster to give notice of the vacancy of the premises for more than thirty days would not vitiate or avoid the policy, if the jury believe from the evidence that the defendant or its agent waived such notice at the time the policy was issued, or at any other time before the loss.'    This instruction is clearly erroneous, and should not have been given.    No principle of law is better settled than that the evidence of a contract cannot exist partly in writing and partly in parol.    Whatever may have been said in reference to

the contract between the parties at the time of or prior to its exe-
cution, after it was reduced to writing parol evidence was inad-
missible to enlarge, modify, or contradict its terms, as expressed
in the written instrument. The parties might, undoubtedly, by a
subsequent agreement, modify or enlarge its terms by parol; but
that was not the case here. What was relied on as an excuse for
not complying with its terms was said when the contract was being
made, and is directly contradictory to it, as evidenced by the
policy."

Plaintiff's counsel cite a large number of cases to sustain their
proposition upon this branch of the case, but they are all clearly
distinguishable from the one under consideration. Upon careful
examination, each case cited will be found to come within one of
the three following classes: *First*, the person whose words or
acts are set up as an estoppel was in fact a general agent; *second*,
the insurance company, by its conduct, had led the insured to be-
lieve that the agent had general powers; *third*, the agent taking
the application at the time had notice of the facts which would
constitute a forfeiture of the policy, if issued.

We, therefore, hold that the defendant is not estopped by the
statement of Angell, the soliciting agent. Insurance Co. v. Con-
over, 98 Pa. St. 384, 42 Am. Rep. 618; Cleaver v. Insurance
Co. (Mich.), 32 N. W. Rep. 660; Hankins v. Insurance Co.
(Wis.), 35 id. 34; Insurance Co. v. Davenport, 37 Mich. 609;
Insurance Co. v. Wolff, 95 U. S. 326; Tool Co. v. Insurance
Co. (Mass.), 13 N. E. Rep. 902; Carrigan v. Insurance Co.,
53 Vt. 418, 38 Am. Rep. 687; Brown v. Insurance Co., 59 N.
H, 298, 47 Am. Rep. 205; Walsh v. Insurance Co., 73 N. Y. 5;
Havens v. Insurance Co. (Ind.), 12 N. E. Rep. 137. There are
many other cases holding the same doctrine.

We now come to the facts which plaintiffs claim constitute a
waiver of the forfeiture of the policy arising from a violation of
the clause regarding additional insurance.

On the day Smith obtained the additional insurance, the follow-
ing letter, signed by him, was mailed to one N. S. Head, who
had, until two days prior thereto, been in the employ of defend-
ant: "Wheatland, 9–2, '87. N. S. Head, Esq., Gen. Agt. Con-
tinental Ins. Co., Fargo, D. T.—Dear Sir: I beg to notify you,

as general agent of the Continental Insurance Company, that I have placed $1,000 of additional insurance on grain in granary, for three months, in the Western Fire and Marine Insurance Company. This, with the $2,000 on grain in policy I have in your company, makes $3,000 total insurance on grain. You will please see that your company has proper notice, and accept notice of additional insurance, and much oblige. Respectfully yours, W. P. Smith."

There is no evidence tending to show that any person connected with the company, besides Head, had any notice of the additional insurance. Head himself testified that he had no recollection of receiving said letter; but whether he ever received it or not is immaterial, in view of the facts proven and undisputed. While Smith addressed Head as general agent, that act does not establish the fact, nor does it, alone, show that he was justified in believing, that Head was defendant's general agent. Head himself, and Mr. Taylor, the superintendent of the company, both testified that Head was a special agent in the farm department; his duties being to nominate and recommend parties for appointment as soliciting agents, and to work with and aid such parties in soliciting farm insurance. This testimony was not contradicted. It is not pretended that Head ever gave Smith even oral permission to obtain other insurance. In fact, it does not appear that Smith ever had any dealings with Head regarding this or any other insurance, except the signing of the letter above quoted, which was written and mailed by the agent of the Western Fire and Marine Insurance Company. True, Hamline, the agent of the last-named company, says it was his custom to notify Head in such cases, and that he had done so several times; but it does not appear that the defendant ever had knowledge of this practice, or in any way sanctioned it. Besides, Head's relations with the defendant ceased two days prior to the mailing of the notice. Under these facts, it cannot be held that the defendant waived that provision in the policy relating to additional insurance. Insurance Co. v. Wolff, 95 U. S. 326.

In the latter case, Mr. Justice FIELD, writing the opinion of the court, says: " But, even if the agent knew the fact of residence within the excepted period, he could not waive the forfeiture thus

incurred, without authority from the company. The policy declared that he was not authorized to waive forfeitures; and to the provision effect must be given, except so far as the subsequent acts of the company permitted it to be disregarded. There is no evidence that the company in any way, directly or indirectly, sanctioned a disregard of the provision with reference to any forfeitures, except such as occurred from non-payment of premiums."

It may with propriety be remarked that several able courts have held, under similar provisions in policies, that notice to the insurance company itself, if permission is not indorsed on the policy, and the company remained silent, is not sufficient to relieve the insured from the effects of a forfeiture.

There is another point in the case upon which plaintiffs' counsel rely to defeat the forfeitures. When the loss occurred, Smith, as we have already seen, wrote to the defendant, notifying it of the loss, and also of the additional insurance. To this letter defendant never replied, any further than to acknowledge its receipt. Immediately, Smith prepared and forwarded the proper proofs of loss. Whether the company, by merely remaining silent and not requesting proofs of loss, can be held to have waived in this manner the forfeiture regarding additional insurance, it is not necessary for us to decide; for it does not appear that the defendant, or any of its agents, had notice of the chattel mortgages at the time the proofs were furnished. Hence it did not waive the latter forfeiture

This brings us to the last proposition in the case. After the action was brought, and with full knowledge of all the facts, the defendant accepted from Smith the sum of four dollars, which was the interest due and unpaid upon the premium note.

The policy would not expire by limitation until July, A. D. 1890. The premium note was delivered with the application, and constituted a part of the contract between the parties. The note became due and payable November 1, A. D. 1886. At maturity Smith paid the principal to Angell, who remitted it to the defendant. The note was immediately forwarded to Angell, with instructions to collect the interest. Two years afterward, and about one month before the trial, Smith paid the four dollars in-

terest, and Angell remitted it to the company. Plaintiffs' position regarding these facts is thus stated in the brief of their attorney : "We did not claim at the trial, nor do we here, that the payment of the note, and acceptance of the amount, after the action was commenced, was of itself a waiver of the claim of forfeiture ; but that it was a fact properly receivable in evidence, as bearing upon the conduct of the company relative to this claim after it had notice of the loss."

By this language we understand that counsel contends that these facts tended at least to prove a waiver. It must be borne in mind that the policy had been in force over one year when the chattel mortgages were given, and over two years when the additional insurance was obtained. The risk had attached, the note and interest were past due, and by the provisions in the note itself, as well as under the laws of the territory (§§ 1541, 1544, Civil Code), the whole premium was earned, although the full term fixed for the running of the policy had not elapsed. The risk had terminated through no fault of the insurer, and the defendant was legally entitled to collect and retain the premium. Had the policy in this case been voidable in its inception, and no risk had ever attached, counsel's position would have been tenable. When, however, the premium is earned and forfeitures occur before the loss, the taking and retaining of the premium is not inconsistent with a defense based upon such forfeiture, and is not evidence tending to show a waiver thereof. Pratt v. Insurance Co., 55 N. Y. 511 ; Shimp v. Insurance Co. (Ill.), 16 N. E. Rep. 229 ; Williams v. Insurance Co., 19 Mich. 451 ; Cohen v. Insurance Co. (Tex.), 3 S. W. Rep. 296 ; Joliffe v. Insurance Co., 39 Wis. 111 ; May, Ins., § 553.

At the close of the testimony defendant's attorneys moved the court to direct a verdict for the defendant upon the following grounds: *First*, that the plaintiffs had forfeited the policy by mortgaging the property insured without the consent of the defendant ; *Second*, that the plaintiffs had forfeited the policy by obtaining additional insurance upon the property without defendant's consent.

This motion the court refused, and submitted the case to the jury, who returned a verdict in favor of the plaintiffs for the sum-

of $2,664; upon which verdict judgment was subsequently entered.

As the case stood, the court should have directed a verdict for the defendant. The stipulations in the policy are such as the parties had a right to make; and the defendant, by delivering the policy, and the plaintiffs, by accepting it, are bound by them. The judgment of the district court is reversed.