DOUVILLE v. FARMERS' MUTUAL FIRE INSURANCE CO. OF SAGINAW COUNTY

1. INSURANCE—DEFENSES—WAIVER.

An insurance company, by placing its refusal to pay a loss solely upon the ground that the policy had been canceled, waives its right to assert as a defense to an action thereon that the insured had not submitted his claim to arbitration, that he was not the owner of the property insured, or that he had failed to disclose incumbrances.

2. SAME—MUTUAL COMPANIES—BY-LAWS—CANCELLATION OF RISK—PUBLIC POLICY.

The power conferred upon the directors of a mutual fire insurance company by 1 How. Stat. § 4253, to make such by-laws, not inconsistent with the Constitution and laws of the State, as may be deemed necessary for the government of its officers and members and the conduct of its affairs, authorizes a by-law requiring the secretary to cancel any risk which, in his opinion, is unsafe; and such by-law is not contrary to public policy.

3. SAME—SCOPE OF CONTRACT.

The by-laws of a mutual insurance company are a part of the insurance contract, as binding upon the member as the policy itself.

Error to Saginaw; Kendrick, J. Submitted April 13, 1897. Decided May 28, 1897.

Assumpsit by Henry Douville against the Farmers' Mutual Fire Insurance Company of Saginaw county on a policy of insurance. From a judgment for plaintiff on

verdict directed by the court, defendant brings error. Reversed.

*D. P. Foote*, for appellant.

*Crane & Crane*, for appellee.

MOORE, J. On the 27th of April, 1895, the defendant company issued to the plaintiff a policy of insurance upon a house and contents and barn and contents belonging to the plaintiff. In the policy it is stated that the buildings were on section 31. The policy contained a clause reading as follows:

"The said company have the right to cancel any policy whenever the board of directors shall deem there is sufficient cause therefor. In such case the secretary shall give the party insured, and the party to whom this policy is payable in case of loss, notice in writing or otherwise of the determination of the company to exercise this right, and upon such cancellation the secretary shall pay such member an equitable proportion of the funds remaining after payment of all losses and debts then due."

A by-law of the company, a copy of which was contained on the back of the policy, reads as follows:

"The secretary is instructed to cancel each policy whose holder has not paid his assessment for a period of 30 days after the expiration of the time stipulated for such payment; also every risk which, in his opinion, is unsafe," etc.

The policy also contained a provision reading as follows:

"No suit or action at law or in chancery shall be commenced or maintained against this company by reason of this policy, but all questions of dispute arising between this company and the assured, or any person claiming under him, her, or them, shall be settled by arbitrators or referees, subject to the charter and by-laws, and their award in writing shall be binding upon the parties, and final."

Section 23 of the charter provides:

"In case of loss by fire, it shall be the duty of the board of directors, or some one or more of them, with the approval of a majority of them, to visit the place of the fire, to ascertain by evidence, under oath, the liability of the company, and the amount thereof; and in case of any disagreement between the board and the loser, either as to liability in whole or in part, said board shall select a suitable and disinterested person, not a member of said company, residing in said county of Saginaw, and in some town other than the one in which the loser shall reside, to act as referee; the loser shall choose another like situate as above, and the two referees so chosen may select a third," etc.

By-law No. 10 provides:

"All applicants for insurance shall state the amount of incumbrance on the premises whereon the property to be insured is situated."

The record discloses that the insurance was effected through Mr. Thomas, who knew the premises. Mr. Thomas filled out the application blank. The application is silent upon the question of incumbrance and the value of the property. Plaintiff says, if Mr. Thomas asked him about the incumbrance, he stated to him just what the facts were. The wife of the plaintiff says that Mr. Thomas did ask about the incumbrance, and was told the amount of it. The buildings were not on the description of land stated in the policy. The testimony is that Mr. Thomas was familiar with the premises, saw the buildings, and was furnished with a tax receipt, for the purpose of getting a description of the premises. The premises had been insured about three years before the policy sued upon was issued.

On the night of July 25, 1895, a loss by fire occurred at the house covered by the policy. The fire was set under the house. The plaintiff thought it was set by a neighbor. There is testimony tending to show that when the officers of the company were adjusting this loss, the last of July or the first of August, they notified him there was an assessment due on his policy, and he would find

notice of it in the post-office.   This assessment was made
in July, and amounted to $2.74.   Notice of the assessment
was sent August 1st, and on the 3d of August was paid
by plaintiff.   The secretary of the company testified that
the payment of this amount would put the plaintiff in
good standing until July, 1896, though he also testified
that the company had notes out that would amount to as
much as the money it had on hand.   On the 6th of
August the secretary sent notice to the plaintiff that his
policy was canceled, which notice was received by plain-
tiff a few days thereafter.   On the 16th day of August
the barn and contents were burned.   The plaintiff at
once notified the secretary of the company of his loss.
The secretary then told him that the company was not
liable, as his policy had been canceled, and the officers of
the company refused to send any adjusters to view the
premises.   August 24th, Mr. Crane, an attorney, appeared
before the officers of the company, and asked them to ad-
just the loss.   They denied that there was any liability
against the company, upon the ground that the policy
had been canceled.   He then made a written demand up-
on them as follows:

"Saginaw, August 24, 1895.
"Farmers' Mutual Fire Ins. Co., Saginaw, Mich.,
To Henry Douville, of Hemlock, Mich., Debtor.
"To loss under certificate number 1,710 on account of
fire which occurred on the night of August 16, 1895, by
which the assured lost barn and shed; also granary; also
his hay and grain in said barn and stacks; also some farm
implements,—all of which the assured insists is a valid
claim against the company, and asks that the same be
adjusted according to the terms and conditions of said
certificate.
"Henry Douville,
"By W. E. Crane, His Attorney."

The attorney of Mr. Douville was then told that the
company denied there was any liability, and if the by-
law was of no force they wanted to know it, and

Douville could sue as soon as he had a mind to.. Later the officers of the company caused this letter to be sent:

"TREASURER'S OFFICE, SAGINAW, MICH., Sept. 14, 1895.
"MR. WILLIAM E. CRANE.
    "*Dear Sir:* Yours of the 6th received, and I have this day presented it to the board of directors. In regard to the loss or damage to the house, we are liable, and will settle with H. Douville when he will sign a receipt. On barn and contents we are not liable.
                            "Yours truly,
                                "LEWIS LISKOW, Sec."

Suit was brought by plaintiff, October 1, 1895. The defendant pleaded the general issue, and gave notice that plaintiff was not the owner of the property described in the insurance policy; *second,* that said policy had been canceled; *third,* that the application for insurance contained a statement that there was no incumbrance upon the property, when, in fact, there was an incumbrance of $500. The testimony of Mr. Thomas, who took the insurance, tended to show that the buildings he insured in 1895 were located just the same as those he insured in 1892, and that the long 40 was worth $2,500, and that an incumbrance of $500 would not cause him to reject the property for insurance, if he had known of the incumbrance. Upon the trial of the case it was insisted, in addition to the defenses set up in the pleadings, that this suit could not be maintained, for the reason that the policy of insurance provided that no suit or action at law should be commenced against the company by reason of this policy. After the testimony was all in, the defendant requested the court to direct a verdict in its favor. The court declined to do this, and instructed the jury to return a verdict in favor of the plaintiff for the amount claimed by him. Defendant appeals.

It is claimed on the part of the plaintiff that the only defense which can be urged by the company is that prior to the loss the policy had been canceled, as that is the only reason that the company gave to the plaintiff or his coun-

sel before suit was brought why the loss was not paid; that, upon the ground of waiver and estoppel, it is now precluded from taking any other position. The record discloses very clearly that, whenever anything was said to any of the officers of the company about settling or adjusting the loss, they insisted the company was not liable, and assigned as a reason why it was not liable that the policy had been canceled. It was their contention that by-law 17 authorized the secretary of the defendant to cancel the policy; that he had done so; that the plaintiff had notice of the cancellation, and the officers of the company desired to know whether the by-law had any validity or not, and said to the plaintiff, in substance, that if he thought he had a claim he had better sue it. No suggestion was made at any time before suit that the policy required the claim to be arbitrated, or that the buildings insured were not the property of the plaintiff, or that it was incumbered. The refusal to pay was based solely upon the ground that the policy had been canceled. It is said in Herman on Estoppel and Res Judicata:

"Requirements that are for the benefit of the company may be waived or modified by the company; and it is well settled, both upon principle and authority, that if a party insured calls upon the insurer to pay his loss, and the latter makes no specific objection to the form or sufficiency of such proofs of that loss as are offered, * * * but declines to pay the claim upon other and different grounds, specifying them, it will be estopped from thereafter setting up defects in the proof of loss as a defense to the claim, being presumed to have waived them. Generally, a refusal by the company to pay, or a denial of its liability, before any preliminary proofs are made as required on the face of a policy, whereby the insured is induced not to comply with the conditions of the policy in that respect, is in law a waiver of the conditions of the policy requiring such proofs to be made. * * * The doctrine that an insurance company, by putting its refusal to pay the loss upon a definite ground, different from a want of preliminary proofs, or of defect in their form or substance, waives the right to insist upon the failure to make such proof as a defense to an action on

the policy, is in harmony with the elementary principle that a party who places his refusal upon one ground cannot, after action, change it to another and different one." 2 Herm. Estop. & Res. Jud. §§ 1210, 1211; *O'Brien* v. *Insurance Co.*, 52 Mich. 131; *Towle* v. *Insurance Co.*, 91 Mich. 219; *Lum* v. *Insurance Co.*, 104 Mich. 397.

As was said in *Towle* v. *Insurance Co.*, when the defendant was asked to adjust this loss, good faith required that the company should apprise plaintiff fully of its position, and, failing to do this, it estops itself from asserting any defense other than that brought to the notice of the plaintiff. We think the only question open to it is whether or not the policy had been canceled at the time of the fire.

It is claimed on the part of the plaintiff that the secretary had no authority to cancel the policy. It is said the act of cancellation can be exercised only by the board of directors; that, as a condition precedent thereto, the company must account with and pay to the insured his unearned premium before cancellation. In relation to the return of the unearned premium, it may be said the record discloses that there was no unearned premium to return. The liability of the company at the time this policy was canceled was in excess of the money on hand. The statute under which this company was organized (1 How. Stat. § 4253) provides, in express terms, that the corporators or trustees or directors shall have power to make such by-laws, not inconsistent with the Constitution and laws of this State, as may be deemed necessary for the government of its officers and members and the conduct of its affairs. Section 7 of the charter provides:

"The board of directors shall have power to make and adopt such by-laws, not inconsistent with the Constitution and laws of the State of Michigan or with this charter, as they may deem necessary for the government of said company and members and the conduct of its affairs, which said by-laws the members of the company shall be bound to observe."

We have already quoted the provision of by-law 17, and we find nothing in its provisions inconsistent with

the charter provisions or the statutory provisions heretofore quoted. The by-law appeared upon the certificate of insurance issued in this case, and it is to be presumed the insured had notice of it. It has been repeatedly held that when a policy of insurance is effected in a mutual insurance company, the insured becomes a member of the corporation, and is bound by its charter and by-laws. The by-law is as much a part of the contract of insurance, and as binding upon the member, as the policy itself. *Becker* v. *Insurance Co.*, 48 Mich. 610; *Borgards* v. *Insurance Co.*, 79 Mich. 440.

It is urged that this by-law was contrary to public policy. It is difficult to see upon what ground this objection can be urged. A condition of things can readily be imagined when a risk becomes so hazardous that, in the interest of the insurance company, it ought to be canceled, and canceled quickly. This by-law was evidently adopted to meet just such an emergency. By becoming a member of the company the insured assented to the by-law, and, we think, is bound by it. A careful examination of the record discloses such a condition of things that we think it was the duty of the learned judge to direct a verdict for the defendant.

Judgment is reversed, and no new trial ordered.

The other Justices concurred.