TAYLOR-BALDWIN CO. v. NORTHWESTERN FIRE & MARINE INSURANCE COMPANY.

Opinion filed July 1, 1909.

### Insurance — Policy — Waiver of Conditions.

Plaintiff, Taylor-Baldwin Company, a corporation, was the owner of a building and stock of goods located in what is called the old town of G., which it insured in defendant company. Afterwards, and contrary to the provisions of the policy it removed the property insured to the new town of G., four miles distant, obtained additional insurance, and installed a gasoline lighting plant. After the removal to the new location, the plaintiff delivered the policy to one Robinson, who was the legal soliciting agent ,of defendant, and requested him to have the insurance company make an indorsement on the policy to cover the property at its new location. Through a misunderstanding, Robinson sent the policy to defendant at its home office, with the written request that it cancel the same, which the company did, and retained the policy, but did not notify the plaintiff. The building and stock of merchandise were afterwards destroyed by fire caused by the gasoline lighting plant. The plaintiff made proofs of loss and sent them to defendant. The proofs showed that the property was destroyed at its new location, the amount of additional insurance obtained, and that the fire was caused by a defective gasoline lighting plant. . The company returned the proofs with a letter denying any liability on the ground that the policy had been canceled before the fire.

*Held,* that the rejection of the claim on the ground stated in defendant's letter did not constitute a waiver of the conditions of the policy.

Appeal from District Court, Grand Forks county; *Chas. F. Templeton,* J.

Action by the Taylor-Baldwin Company against the Northwestern Fire & Marine Insurance Company. Judgment for Plaintiff, and defendant appeals.

Reversed.

*Ball, Watson, Young & Hardy,* for appellant. *W. S. Stambaugh,* for respondent.

CARMODY, J. This action is based upon a fire insurance policy. The case was tried by the court without a jury. The facts are substantially as follows: The plaintiff is a corporation and as such was engaged in the mercantile business at the old town of Garrison, in McLean county, until September 1, 1905, and thereafter at

the new town of Garrison, four miles distant therefrom. The defendant is a corporation engaged in fire insurance business. In April, 1905, the plaintiff owned a frame store building and a stock of merchandise contained therein, all situated in the old town of Garrison. On April 17, 1905, the defendant issued its policy of insurance on said property for one year for $2,300, to wit, $2,000 on the merchandise and $300 on the building. The insurance was solicited by D. P. Robinson, who was defendant's local soliciting agent at Coal Harbor. In August and September, 1905, the store building and merchandise were moved to a point four miles distant, to what is called the "new town of Garrison," and the store building and stock were located at that point upon lots 11 and 12, in block 11; the merchandise being in part in the old store building and in part in a new store building adjacent thereto. On November 14, 1905, after its removal to the new town of Garrison, the store building and stock of merchandise were destroyed by fire caused by a defective lighting plant which plaintiff had installed upon the premises, and which was used for lighting the building. The defendant's policy of insurance described the location of the property insured at the old town of Garrison and insured the plaintiff on said property "while located and contained as described herein and not elsewhere." The property in fact was destroyed at the new town of Garrison, four miles distant. The policy contained a provision which rendered it void in case the defendant took out additional insurance, or if illuminating gas or vapor was generated in the building or adjacent thereto for use therein. Gasoline was generated for use in the building at its new location and was the cause of its destruction. The plaintiff also took out additional insurance. No permit therefor was obtained, and no permission was obtained for the use of gasoline. On October 3, 1905, the plaintiff delivered the policy to Robinson for transmittal to the defendant at its home office. It was its purpose to have Robinson request an indorsement to cover the property at its new location; but Robinson understood that the plaintiff desired to have the policy canceled, and that it intended to take out other insurance at a later time. On October 15, 1905, Robinson sent the policy to the defendant at its home office, with a written request that the defendant cancel the same. On October 18, 1905, the defendant complied with such request and canceled the policy and entered a record of its cancellation upon its books, and made out a statement of the return premium, and has since said date had such

canceled policy in its possession.  Thereafter, and subsequent to the fire, it sent to Robinson the amount of the return premium, and the same was tendered to plaintiff.  On January 9, 1906, the plaintiff sent a written proof of loss to the defendant.  Said proof of loss contained a statement that at the time of the fire there was additional insurance upon said property in the Home Insurance Company of New York, in the sum of $1,500 on the building, and in the sum of $3,600 on the stock of merchandise.  That in said proof of loss was contained the following statement: "Building and stock moved to lots 11 and 12, block 11, Garrison, McLean county, N. D., and agent of company notified on or about October 3, 1905."  And also the following in reference to the fire: "Fire occurred on the 14th day of November, 1905, about the hour of 7 o'clock p. m. Cause of fire defective gasoline lighting plant."  Defendant immediately returned said proof of loss with a letter stating that it denied "any liability under the policy, as same was canceled on October 18, 1905, and the fire occurred on November 14, 1905."  The plaintiff did not request Robinson to alter the policy so as to cover the property at its new location, and he had no authority to make such alteration.  No change in the policy as originally issued was ever made.  From the foregoing facts the court concluded as matter of law that the defendant was liable and directed the entry of judgment, from which this appeal was taken.

The only question is:  Do the facts herein stated sustain the judgment?  Respondent contends that defendant, by returning to plaintiff its proof of loss stating that it denied any liability under the policy, as the same was canceled on October 18, 1905, and the fire occurred on November 14, 1905, waived the following defenses: "First that the insured property was removed to the new town of Garrison, a distance of four miles, and no permit or indorsement upon said policy was obtained from the defendant providing that said policy should cover the risk in the new location.  Second, that the fire which destroyed the property was caused by a defective gasoline lighting plant, which plaintiff had installed upon the premises upon which the store building was situated, and which was used by the plaintiff in lighting said building; that the use of such lighting plant was prohibited by the provisions of the policy, and no permission for this use was obtained from the defendant or indorsed on the policy sued on.  Third, that the plaintiff had obtained other insurance upon the property, without notice to the defendant and

without permission so to do from defendant indorsed upon the policy." And the only defense available to defendant was that the policy had been cancelled before the fire, and says: "It may be conceded that, unless defendant has waived and is estopped to plead the defenses, each of them is a complete defense to an action on the policy." And contends that if an insurance company, with knowledge of all the circumstances attending a loss, undertakes to give specific reasons for denying liability, this will operate as a waiver of, or estop the company to assert, other causes of complaint, and the company cannot, when sued on a policy, set up any additional grounds of defense than those specified. Thus, if a company sets up one ground of forfeiture as a defense to an action on a policy, and denies liability on this ground alone, it thereby waives all other known grounds of forfeiture or breaches of the conditions of the policy, and cites the following cases to sustain its contention: Brink v. Insurance Co., 80 N. Y. 108; Titus v. Insurance Co., 81 N. Y. 410; Kiernan v. Insurance Co., 150 N. Y. 190, 44 N. E. 698; Smith v. Insurance Co., 107 Mich. 270, 65 N. W. 236, 30 L. R. A. 368; Douville v. Insurance Co., 113 Mich, 158, 71 N. W. 517; Western & Atlantic Pipe Lines v. Insurance Co., 145 Pa. 346, 22 Atl. 665, 27 Am. St. Rep. 703; Geo. Home Ins. Co. v. Allen, 128 Ala. 451, 30 South. 537; Moore v. Insurance Co., 38 Wash. 31, 80 Pac. 171; McCormick v. Insurance Co., 163 Pa. 184, 29 Atl. 747; Johnson v. Insurance Co., 1 N. D. 167, 45 N. W. 799.

We think most of these cases are distinguishable from the case at bar. In Brink v. Insurance Co., supra, defendant received the proofs of loss without objection, retained them, examined the insured in respect to them, and refused to pay the loss on the ground of fraud, and so declared to the insured. Thereupon an action was commenced. At the trial the company failed to prove the charge upon which it relied, and then sought to raise the question of the time of filing the proofs of loss. The court held it was estopped from so doing, and used the following language: "They may refuse to pay without specifying any ground, and insist upon any available ground; but if they plant themselves upon a specified defense, and so notify the assured, they should not be permitted to retract after the latter has acted upon their position as announced, and incurred expense in consequence of it. If a company intends to avail itself of the technical objection that the proofs are not filed in time, common fairness requires that it should refuse to receive them on that

ground, or at least promptly notify the assured of their determination; otherwise the objection should be regarded as waived."

In Titus v. Insurance Co., supra, there was a mortgage on the premises payable to plaintiff, who, without the knowledge of the ininsured, procured additional insurance. There was also a small judgment against the insured which was not disclosed in the application. The policy contained a provision that it should be void if foreclosure proceedings should be commenced against the insured property. The policy contained provisions for its renewal. After the policy was issued, and before its renewal, the judgment was paid. The policy contained a provision that the insured should, if required, submit to an examination or examinations under oath by any person appointed by the company, and subscribe to such examinations when reduced to writing. The mortgagee commenced foreclosure proceedings. The court used the following language: "After the fire, and after the defendant had notice of the proceedings, it required the insured to appear before a person appointed by it for that purpose, to be examined under the clause in the policy hereinbefore mentioned, and he was there subjected to a rigorous inquisitorial examination. It had the right to make such examination only by virtue of the policy. When it required him to be examined, it exercised a right given to it by the policy. It then recognized the validity of the policy and subjected the insured to trouble and expense, after it knew of the forfeiture now alleged, and it cannot now therefore assert its invalidity on account of such forfeiture. * * * But it may be asserted broadly that if, in any negotiations or transactions with the insured, after knowledge of the forfeiture, it recognizes the continued validity of the policy, or does acts based thereon, or requires the insured by virtue thereof to do some act or incur some trouble or expense, the forfeiture is as matter of law waived."

In Kiernan v. Insurance Co., supra, the court said: "An election by the company to insist upon the forfeiture of a fire insurance policy for a breach of its conditions must be asserted within a reasonable time after acquiring knowledge of the breach." In this case there was a chattel mortgage on a portion of the property. After the fire, with full knowledge of the chattel mortgage, the insurer had an appraisement made which the insured refused to accept and brought an action on the policy. The court held the insurer could not set up the chattel mortgage as a breach of the contract. The

negotiations covered considerable time. The defendant made an appraisement of the property destroyed, made proofs of loss, and asked plaintiff to swear to them, which he refused to do, and he himself made proofs of loss which he delivered to the defendant, who retained them several months, made offers of settlement to the plaintiff, and raised no question whatever as to the chattel mortgage. The court said: "If the words and acts of the insurer reasonably justify the conclusion that with full knowledge of all the facts it intended to 'abandon or not to insist upon the particular defense afterward relied upon,' a verdict or finding to the effect establishes a waiver, which, if it once exists, can never be revoked. During all the negotiations, there was neither act done nor word spoken by any officer or agent of the company indicating an intent to rely upon the breach of warranty, or discriminating in any way against the property to which the warranty related. The policy was treated as valid in every respect, and the only questions raised related to values. The preparation by the defendant of proofs of loss, based upon the award and including the mortgaged property, showed an intention to waive the forfeiture and to rely upon the appraisal. There was no condition suggested, nor right reserved, nor even an allusion made to the possibility that the company might refuse to pay anything on account of the property in the mortgage. It did not deny its liability to pay for that property until after all negotiations had ceased, and this action was about to be commenced. The officer who prepared and tendered the proofs of loss represented the company, and what he intended at the time the company is presumed to have intended. Unless his intention was to pay the loss on the mortgaged property as well as the rest, why did he insert it in the proofs of loss? Why did he ask the plaintiff to swear to a loss upon property that he did not intend to pay for? Why did he treat one kind of property the same as another, unless he intended to waive the breach of warranty? The rejection of the proofs of loss solely for the reason that they were not based upon the award, without saying anything about an intention to forfeit, indicates that no such intention existed."

In Smith v. Insurance Co., supra, the policy provided that it would be forfeited if mechanics be employed in building, altering, or repairing the within-described premises for more than 15 days at any one time, or if there be kept, used, or allowed on the above described premises benzine, naphtha, or other explosives. Painters

were employed to paint the building and used gasoline torches to burn off the old paint. The gasoline used in these torches was kept in a five-gallon can in the building. After the fire and proofs of loss the defendant refused to pay on account of the storage of gasoline in the building. On the trial the defendant attempted to set up an additional defense that mechanics were employed in repairing the building at the time of the fire in violation of the conditions of the policy. The court held it was estopped, and said: "Common painters are not 'mechanics' within the meaning of such word in a policy which provides that the policy shall be void if 'mechanics' be employed in repairing the building for over a certain length of time without the consent of the insurer. * * * Where the insurer, after thoroughly examining the loss, and being aware at the time of the loss that painters were at work on the building, denies its liability solely on the ground that gasoline was stored in the building without its consent, it cannot set up as a defense that the policy was avoided by permitting painters to work on the building without its consent, in violation of the condition in the policy." The court further held: "The storage of gasoline in the building for the purposes aforesaid was not a violation of the conditions of the policy." Hence it was not·necessary to a decision of the case to hold that the company waived the defense that mechanics were employed on the building, and it is at most only a dictum.

In Douville v. Insurance Co., supra, the defendant pleaded the general issue, and gave notice that plaintiff was not the owner of the property described in the insurance policy; second, that said policy had been cancelled; third, that the policy of insurance contained a statement that there was no incumbrance upon the property, when, in fact, there was an incumbrance of $500. The court held that the policy had been cancelled and the defendant was not liable, but further said: "The record discloses very clearly that, whenever anything was said to any of the officers of the company about settling or adjusting the loss, they insisted the company was not liable, and assigned as a reason why it was not liable that the policy had been cancelled, and were estopped from asserting any other defense." And said: "Generally, a refusal by the company to pay, or a denial of its liability, before any preliminary proofs are made, as required on the face of a policy, whereby the insured is induced not to comply with the conditions of the policy in that respect, is in law a waiver of the conditions of the policy requiring such proofs to be

made." It will be readily seen from the foregoing language that it has no application to the case at bar.

In Western & Atlantic Pipe Lines v. Insurance Co., supra, the company insured oil in an iron tank on the premises of the plaintiff which was removed a distance of 300 or 400 feet by a flood. The insurer resisted payment on the ground that the oil was not insured at the place it was destroyed. On the trial it attempted to introduce another defense that the plaintiff was not the owner of the oil. The court said: "The supplemental defense, afterwards sprung upon the plaintiff, that it was not the owner of the oil, might well be disposed of by saying it came too late; but it was not necessary to decide that question, the jury having found that plaintiff was the owner of the oil."

In Georgia Home Ins. Co., v. Allen supra, the defendant pleaded a so-called "iron-safe clause," requiring the assured to keep a set of books and inventory securely locked in a fireproof safe at night and at times when the store was not actually opened for business. The court said: "An iron-safe clause in a policy of insurance, requiring the assured to keep a set of books and inventory of the stock, which shall be kept locked in an iron safe at night and at other times when the store is not open for business, is a valid condition and binding upon the assured, the breach of which will avoid the policy unless it is waived by the insurer." And further said: "An adjuster of an insurance company, with full power to make examinations, investigations, and adjustments of a loss, has authority to waive the conditions of the policy; and if such adjuster, with full knowledge of the breach of the conditions of the policy of the insured, enters upon the investigation and adjustment of the loss, and treats the policy as valid and subsisting, any defense the insurance company had to the policy, by reason of the breach of the conditions, will be deemed to have been waived."

Moore v. Insurance Co., supra, was an accident policy. The company refused to recognize the claim on the ground that the insured did not notify it of the injury within 10 days, as provided in the policy. The company resisted payment, and nonsuit was granted on the ground that the insured did not furnish proofs of his injury within the time limited after giving notice to the company that he had received an injury. There was evidence introduced at the trial tending to show that the notice was furnished. Letters written by the company were introduced denying liability solely on the ground

that notice was not given of the accident.    Held, defendant was estopped from urging the defense that the plaintiff did not furnish proofs of his injury within the period limited after giving notice to the company that he had received an injury.    While this case sustains somewhat the contention of the plaintiff, we think it is distinguishable from the case at bar, as, by the terms of the accident policy, proofs of injury were to be furnished after the insured gave notice to the company of his injury.    He claimed to have given such notice.    The company denied having received it and refused payment on that ground.    Hence giving proofs of the injury when the company denied receiving any notice of it would have availed nothing.

In McCormick et al. v. Insurance Co., supra, the policy provided that the lumber covered by the insurance should not be kept within 300 feet of a mill.    After the fire defendant's adjuster visited the premises and attempted to make a settlement with the insured, stated that he was satisfied that the lumber was kept 300 feet from the mill, but suggested that there was little if any lumber in the yard at the time the fire occurred.    That thereafter defendant's general agent wrote plaintiffs saying he could prove that none of the lumber destroyed was plaintiffs'.    That plaintiffs, in answer, wrote that defendant's adjuster had waived formal proofs of loss, and, if defendant was not satisfied with his action, to say so now, so that plaintiffs might put themselves in proper shape.    And that the general agent replied that he was satisfied plaintiffs had no lumber among that burned and that they might sue at once.    Held, a waiver of the space clause as a defense.    Judge Mitchell, of the Pennsylvania court, dissented from so much of the opinion as implied there was any sufficient evidence of waiver.

Johnson v. Insurance Co., supra, was a hail insurance policy.    It provided, among other things, that no payment would be made until requisite proofs, duly sworn and certified to by the assured and one disinterested party, were received at the office of the company.    The plaintiff sent to defendant by registered mail a statement of his losses, asked to have the loss submitted to appraisers, as provided in the policy; but the defendant neglected to do so.    The policy was in force for six months.    Not having received any answer to his letter notifying the company of his loss, he caused the letter marked "Exhibit A" to be written, to which the letter marked "Exhibit B" is an answer.    They are, respectively, as follows:

Exhibit A: "Larimore, Dakota, Dec. 16, 1885. The Dakota Fire & Marine Insurance Co., Chamberlain—Gentlemen: At the instance of Mr. W. E. Johnson, I write you in reference to his policy No. 514 for hail insurance in your company. Mr. Johnson has complied with the conditions imposed by your agent when here, and sent in his papers quite a long time ago. · He also saw your general manager, Mr. English, in Grand Forks, about November 10th last, who promised to let him hear from the company upon his return. No word has yet been received by Mr. J., and the time, December 1st, wherein the policy promised final settlement for any loss shall be made, has passed. Mr. Johnson is thus kept in ignorance of your intentions, and is without a word of any kind from you. He desires me to say, if settlement for his loss is not made before January 1st prox., he will enter suit to bring about the same. Very respectfully, W. N. Roach."

Exhibit B: "Chamberlain, Dak., Dec. 22, 1885. W. N. Roach, Esq., Larimore, Dakota—Dear Sir: Replying to yours of the 16th inst. in regard to loss under policy 514, issued to W. E. Johnson, we beg to say we are in possession of some facts in regard to this insurance which, unexplained, would lead us to reject the loss, and ·resist its payment in court, if necessary, though this position we do not yet take, and hope we shall not be compelled to. Will give you definite answer as soon as, in due course of mail, we can receive answer to letter already written for further information in reference to this case. We do not ask you to wait on us but suggest that, upon receipt of information above referred to, if our attorney advises us that we are probably liable, or even that he is in doubt as to our liability, we shall at once adjust and pay the loss. Yours truly, A. G. Kellam."

The defendant did nothing further, and, on suit being brought, set up as defense failure to make proof of loss. Held, the letter of December 22d, marked "Exhibit B," was a waiver.

We think the correct rule is laid down in Cooley's Briefs on Insurance, vol. 3, p. 2681, Judge McClain on Fire Insurance, and Kerr on Insurance, as hereinafter quoted: "As stated, it is essential that an insurer shall have knowledge of the grounds of forfeiture not relied on in denying liability on specified grounds, if the action of the insurer is to be regarded as a waiver of the unassigned grounds. And it is also essential that the unassigned grounds be such that they could have been remedied or obviated had the insured known that

the insurer intended to rely thereon, and that the insured was so far misled or lulled into security by the silence as to such grounds that to enforce them subsequently would be unfair or unjust, as the whole doctrine depends on estoppel, the important feature of which is loss or injury to the other party by the act of the party to be estopped." Judge McClain, of the Iowa Supreme Court, says in his article on Fire Insurance (19 Cyc. 793) : "It has been generally held that if the insurer, after a loss has occurred, claims a forfeiture for non-compliance with certain conditions of the policy, it cannot be heard afterward to assert further or different breaches as a defense. The authorities are by no means unanimous. Other holdings are more in accord with general principles of contract and estoppel in holding that the assertion of a forfeiture upon one ground does not, in the absence of an affirmative statement that other breaches are not claimed, amount to a waiver of a right to set up such further breaches." Kerr on Ins. 706 says : "The doctrine of waiver, as asserted against insurance companies, in connection with insurance contracts, to avoid the strict enforcement of conditions contained in their contracts, is only another name for the doctrine of estoppel. It can only be invoked where the conduct of the companies has been such as to induce an action in reliance upon it and where it would operate as a fraud upon the assured if they were allowed to disavow their conduct and enforce the conditions. To a just application of this doctrine it is essential that the party sought to be estopped from denying the waiver claimed, should be shown to have been appraised of all the facts, prior to or at the time of the alleged waiver." The following are some of the authorities that tend to sustain this rule : Northern Ins. Co. v. Ass'n, 183 U. S. 308, 22 Sup. Ct. 133, 46 L. Ed. 213 ; Smith v. Continental Ins. Co., 6 Dak. 433, 43 N. W. 810 ; Hubbard v. Mutual Reserve Life Ins. Co. (C. C.) 80 Fed. 681 ; Insurance Co. v. Wolff, 95 U. S. 326, 24 L. Ed. 387 ; St. Onge v. Insurance Co. (C.C.) 80 Fed. 703 ; Devens v. Insurance Co., 83 N. Y. 168 ; Weed v. Insurance Co., 116 N. Y. 106, 22 N. E. 229 ; Gibson Electric Co. v. Insurance Co., 159 N. Y. 418, 54 N. E. 23 ; Everett v. Insurance Co., 142 Pa. 332, 21 Atl. 819 ; McCormick v. Insurance Co., 163 Pa. 184, 29 Atl. 747 ; Cassimus v. Insurance Co., 135 Ala. 256, 33 South. 163 ; Robinson v. Insurance Co., 135 Ala. 650, 34 South. 18 ; Thompson v. Insurance Co., 11 N. D. 274, 91 N. W. 75, s. c. 13 N. D. 444, 101 N. W. 900 ; Vandervolgen v. In-

surance Co., 123 Mich. 291, 82 N. W. 46; Keet-Rountree Dry
Goods Store v. Insurance Co., 100 Mo. App. 504, 74 S. W. 469; Kerr
on Ins. pp. 714-716 and cases cited; Clements on Ins. pp. 436,
437. Kerr on Insurance p. 715 supra, says: "The rule is
that, when an insurance company becomes aware that all rights
under a policy have been lost, it cannot, for an indefinite period,
disguise its purpose to resist payment of the loss by affirmative
action which would lead the insured to believe that it admits its
liability, and intends to discharge it. Thus an adjustment of a loss
with full knowledge by the insurer of the violations of a condition
of the policy, and without notifying the insured of an intention to
insist upon the forfeiture, is a waiver of its rights to assert the
forfeiture; and the collection of a premium for the insurance
covering the loss; and the requirement of original proofs of loss, or
the amendment of defective proofs; and a demand for arbitration."

In Insurance Co. v. Wolff, supra, the United States Supreme
Court, through Mr. Justice Field, said: "The doctrine of waiver,
as asserted against insurance companies to avoid the strict enforce-
ment of conditions contained in their policies, is only another name
for the doctrine of estoppel. It can only be invoked where the con-
duct of the companies has been such as to induce action in reliance
upon it, and where it would operate as a fraud upon the assured
if they were afterwards allowed to disavow their conduct and
enforce the conditions."

In Devens v. Insurance Co., supra, there was insurance on a
boat. There was a breach of warranty, in that the owners kept it
at a different place than that specified in the policy. The captain,
while heating pitch, set the boat on fire. When proof of loss was
presented to the defendant, it refused to pay on the ground that the
fire was caused by the carelessness of the captain of the boat. On
the trial it relied on the breach of warranty. Held, not an estop-
pel. In speaking of Brink v. Insurance Co., cited by respondent,
Judge Andrews said: "The doctrine of waiver was, we think,
properly applied in that case; but it should not be extended as to
deprive a party of his defense, merely because he negligently or in-
cautiously when the claim is first presented, while denying his liabil-
ity, omits to disclose the ground of his defense or states another
ground than that upon which he finally relies. There must in addi-
tion be evidence from which the jury would be justified in finding
that with full knowledge of the facts there was an intention to

abandon, or not to insist upon the particular defense afterward relied upon, or that it was purposely concealed under circumstances calculated to, and which actually did, mislead the other party to his injury."

In Cassimus v. Insurance Co., supra, the insurance was on a stock of merchandise. The policy provided, among other things, that, if gasoline was stored in the premises, it vitiated the insurance, or if anything was kept on the premises that tended to increase the hazard. Upon receipt of proof of loss, the company denied liability on one ground, and when suit was commenced defended on two. The Supreme Court of Alabama said: "The fact that the defendant, upon the receipt of notice and proof of loss, denied any liability under the policy, stating at the time wherein its conditions had been violated in only one particular, did not prevent it from afterwards setting up in defense other and different breaches of the conditions of the policy, when it is not shown that the plaintiff was misled to his injury by the claim of non-liability on the particular ground stated."

Thompson v. Life Ins. Co. supra, was an action on a life insurance policy. The court said: "Waivers are sustained because the insured has been misled to his prejudice."

In most of the cases cited by respondent, the insurance companies, after the fire, by their acts led the insurer to believe that they were liable and intended to pay the loss. The case of Smith v. Insurance Co. tends to sustain respondent's contention; but, as hereinbefore stated, it was not necessary to decide the question of estoppel in that case, and it seems to have been at least partially overruled by the later case of Vandervolgen v. Insurance Co., 123 Mich. 291, 82 N. W. 46. It is plain to us that the plaintiff cannot prevail in this action. It could not have been misled by the letter of the defendant. Its position was in no way changed by such letter. The plaintiff previously procured the additional insurance, had removed the property, and installed the gasoline plant, which caused the fire. Defendant at the time it wrote the letter assumed that the policy had been cancelled, and, if it had been, of course, it was not liable. At the commencement of this action it appeared from the complaint that the plaintiff had no knowledge of the cancellation or attempted cancellation of the policy of insurance by defendant. This the defendant was not aware of at the time it wrote the letter returning the proofs of loss. Hence it was not estopped from pleading its other

defenses which the plaintiff concedes made the insurance void, but insists that defendant is estopped from making these defenses by reason of the letter hereinbefore mentioned. We think not. It at all times denied its liability, and plaintiff has in no way been misled by any act or statement of the defendant. It has done nothing under the policy; has exercised no right by virtue of it; nor has it required the plaintiff to perform any act which it was required by virtue of the policy to perform. The policy was void before the fire occurred, and was void by acts knowingly committed by plaintiff; and the letter of defendant denying liability on the ground that the policy had been cancelled did not revive it. If D. P. Robinson had carried out the instructions of the plaintiff and obtained from the defendant an indorsement on the policy, consenting and providing that the said policy of insurance should cover the building and personal property therein described, at its then location on lots 11 and 12, in block 11, of the new town of Garrison, would not have helped the plaintiff in this action, as the plaintiff never asked for any permission to obtain additional insurance or to use the gasoline lighting plant, which caused the fire. If the defendant had made the indorsement as the plaintiff intended it should, it would have known that the policy was not cancelled, and could, if it desired, have defended any action brought against it on the ground that it had not given plaintiff permission to obtain additional insurance or install the gasoline lighting plant.

The district court of Grand Forks county will reverse its judgment and enter a judgment dismissing the complaint. All concur.

Morgan, C. J., not participating. Chas. A. Pollock, Judge of the Third Judicial District, sitting by request.